UNITED STATES of America, Plaintiff,

v.

Roy Tibbals WILSON, et al.,
Defendants.

OMAHA INDIAN TRIBE, organized Indian Tribe pursuant to Act of June 18, 1934 (48 Stat. 984) as amended, Plaintiff,

v.

Harold JACKSON and Otis P. Peterson and the District Court of Iowa In and For Monona County, Defendants.

OMAHA INDIAN TRIBE, etc.,
Plaintiffs,

v.

AGRICULTURAL INDUSTRIAL INVESTMENT COMPANY, et al., Defendants.

Nos. C-75-4024, C-75-4026 and C-75-4067.

United States District Court,
N.D. Iowa, W.D.

Jan. 13, 1984.

James J. Clear, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for United States of America.

William H. Veeder, Washington, D.C., for Omaha Indian Tribe.

Robert J. Becker, Donald Buresh, Omaha, Neb., for Roy Tibbals Wilson.

Peter J. Peters, Council Bluffs, Iowa, for RGP, Inc. and Otis Peterson.

Elizabeth M. Osenbaugh, Asst. Atty. Gen., Thomas J. Miller, Atty. Gen., John P. Sarcone, Asst. Atty. Gen., Des Moines, Iowa, for State of Iowa and Iowa State Conservation Com'n.

Maurice Nieland, Sioux City, Iowa, for Harold Sorenson and Luea Sorenson.

BOGUE, Chief Judge.

## THE DISPUTE

The extensive history of this dispute indicates that it may die of old age before it can be successfully adjudicated. This case was filed in 1975. Originally, it involved approximately 11,000 acres of land adjacent to the Missouri River in an area known as Blackbird Bend. The issues were severed, however, and initially, the land area involved was confined by the Court to an area known as the Barrett Survey Area which contains approximately 2900 acres. After chipping away at the issues involved in this dispute, only ownership of approximately 700 acres of that land is still in question. Other remaining issues must await settlement of the title question.

Title to 2200 of the 2900 acres in dispute was ordered quieted by the Eighth Circuit Court of Appeals based on apportionment of burden of proof and a presumption of title based on the failure of a party to meet its burden. This Court must decide for the third time whether the party having the burden of proof has succeeded. Ultimately, whether any party prevails on the merits must be settled. This Court holds that again the parties with the burdens of proof failed and therefore lose.

## FACTS

For detailed discussions of the facts see the previous opinions in this dispute.[1] *Omaha III*, 707 F.2d 304 (8th Cir.1982); *Blackbird Bend II*, 523 F.Supp. 874 (N.D.Ia. 1981); *Omaha II*, 614 F.2d 1153 (8th Cir. 1980); *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979); *Omaha I*, 575 F.2d 620 (8th Cir. 1978); *Blackbird Bend I*, 433 F.Supp. 57, 67 (N.D.Ia.1977).

Initially, this case was a classic accretion versus avulsion case. If, on the merits, the Court found that the Missouri River moved by avulsion, then title would be quieted in the Tribe. Conversely, if the Court found movement by accretion, title would be quieted in the Defendants. Of course, a multitude of combinations were also possible.

---

1. The Court will refer to the Court of Appeals' former decisions as *Omaha I, Omaha II,* and *Omaha III.* The Court will refer to its own decisions as *Blackbird Bend I* and *Blackbird Bend II.*

However, time and evidence proved too much. Twice this Court held that all relevant movements of the Missouri River were through accretion. Twice, the Court of Appeals characterized these findings as an "educated guess" and extremely "speculative". *Omaha I*, 575 F.2d at 648; *Omaha II*, 614 F.2d at 1160. The Court of Appeals overturned the fact findings as clearly erroneous. *Omaha II*, 614 F.2d at 1160.

After the Court of Appeals issued its mandate in *Omaha III*, this Court directed the parties to submit Post-Appeal Findings and Conclusions. See Order filed July 18, 1983. The parties again painstakingly prepared proposed findings and conclusions. *See* Proposed Post-Appeal Findings of Fact and Conclusions of Law filed by: the State of Iowa, and the Iowa Conservation Commission; the United States; the Omaha Indian Tribe; and Wilson, Lakin, RGP Inc. and Peterson.

The parties again point to the evidence in the record which purportedly supports their respective positions concerning accretion and avulsion. The Eighth Circuit, of course, has foreclosed any finding of accretion. The question remaining is whether the Tribe can prove avulsions by a preponderance of the evidence. The Court of Appeals disclaimed any opinion on the question:

> Although we indicated the landowners' proof was speculative whether the river moved by avulsion or accretion in both *Omaha I* and *Omaha II*, we did not assess the evidence in terms of whether the Tribe carried its burden of proof that there was avulsive movement to sustain the claim of the Tribe.

*Omaha III*, 707 F.2d at 309.

Reduced to its simplest terms, the issue becomes whether considering the evidence and the rulings of the Court of Appeals, the river banks were washed away particle by particle and likewise deposited elsewhere, or whether the thalweg moved by jumps. In *Blackbird Bend I*, the Court held that its finding of accretion was "supported by a preponderance of the evidence and would not be altered by any different allocation of the burden of persuasion." 433 F.Supp. at 67. The Eighth Circuit held that this was based on an erroneous definition of avulsion. However, the Court subsequently confronted the same question in *Blackbird Bend II* after the Court of Appeals ruled on the proper definition of avulsion and again found that all river movements were accretive. 523 F.Supp. at 899. The Court of Appeals did not hold that the Court was again wrong.

The Court has reviewed the extensive Proposed Findings and Conclusions. Nothing is gained by recataloguing the evidence here. The Court will not alter its view of the evidence. The Court of Appeals has foreclosed that view becoming the foundation of a decision. As a result of this Court's view and the Court of Appeals mandates, no party can meet its burden of proving accretion or avulsion. This case then turns on the questions of law which are settled.

### BURDEN OF PROOF

In *Blackbird Bend I*, the Court examined the law and held that 25 U.S.C. § 194 [Section 194] did not apply to this case.[2] 433 F.Supp. at 57, 66. The Eighth Circuit and Supreme Court agreed that this was error. *Omaha I*, 575 F.2d 620, 633; *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 99 S.Ct. 2429, 2538, 61 L.Ed.2d 153 (1979). The Eighth Circuit and the Supreme Court disagreed on which defendants were "white persons" subject to Section 194. The Eighth Circuit held that all defendants were "white persons" subject to Section 194. 575 F.2d at 633. However, the Supreme Court held that the State of Iowa, a sovereign, was not a "white person". 99

---

**2.** 25 U.S.C. § 194 states:
> In all trials about the right of property in which an Indian may be a party on one side, and a white person on the other, the *burden of proof* shall rest upon the white person,

> whenever the Indian shall make out a *presumption* of title in himself from the fact of previous possession or ownership. (emphasis added)

S.Ct. at 2538. The burden of proof was, therefore, shifted to all defendants except the State of Iowa.

This simple shifting of the burden of proof became critical when the Court of Appeals overturned this Court's fact findings.[3] The Tribe, as the Plaintiff in this action, would, under normal circumstances have the burden to prove its case. But, Section 194 operated to place the burden of proof on the private Defendants. The Tribe, as Plaintiff, retained its burden of proving its title to land claimed by the State of Iowa.

*Omaha III* further clarified the effect of Section 194. The Court of Appeals examined how Section 194 affected the burden of proof concerning the land which had been fee patented.

> Thus, as in the controversy involving the State, we deem it important that the Tribe must carry its burden of proof of rightful ownership as to this land. Because Section 194 is not applicable to these 400 acres, it is clear that the burden of proof does not rest on the landowners.

707 F.2d at 309.

The Court of Appeals in a footnote, however, delegated another factual task to the Court to be decided before assignment of the burden can be settled.

> The record is not clear as to which lands within the disputed 700 acres were divested by the Indian Tribe and the government and which were not. The Tribe contends some of the area was allotted land relinquished back to the Tribe. *See* Plate I. Assuming the Tribe can establish that land was relinquished back to the Tribe, if the land is not otherwise claimed by the State of Iowa, title to such relinquished land should be quieted in the Tribe, as trust land as we ruled in *Omaha II.*

707 F.2d at 309, n. 8.

There appears to be no dispute on which parcels of land were allotted and relin-

quished and on which parcels patents were issued and later cancelled. *See* Proposed Findings of the United States at p. 3–5; Proposed Findings of the State of Iowa at p. 1–3; Memorandum of Defendants Wilson, Lakin, RGP, Inc., and Peterson at p. 1–3; Memorandum of Points and Authorities of Omaha Indian Tribe at p. 15–16. The private Defendants further concede that unless patented, the lands never left trust status. Memorandum of Wilson, et al. at p. 2. However, the United States indicates that portions of some of the parcels are not contained within the Barrett Survey Area. To the extent that any portion of any of these tracts is not contained within the Barrett Survey Area, this Court states no opinion as to the disposition of such land. Because of application of Section 194 and the directive of the Court of Appeals, all allotted lands contained in the 700 acres still in dispute, which were not fee patented and which are not otherwise claimed by the State of Iowa, will be quieted in the Tribe after survey and settlement of the improvements issue as discussed later in this Opinion. Therefore, all that is left for the Court to decide is the disposition of lands claimed by the State of Iowa and parcels of land which are described in non-cancelled fee patents.

## LANDS CLAIMED BY IOWA

Because this Court in *Blackbird Bend II* determined that all movements of the Missouri River over the Barrett Survey Area were accretive, the Court concluded that the Western land must also belong to the Tribe as accretions to land ordered quieted in the Tribe by the Eighth Circuit. 523 F.Supp. at 899. In *Omaha III*, the Court of Appeals held that *Blackbird Bend II*'s reasoning, while tempting, was again erroneous. 707 F.2d at 308. The Court of Appeals held that this reasoning allowed the Tribe to bootstrap its victory via Section 194. *Id.* The Court of Appeals concluded that Section 194 could have no part

---

**3.** In *Blackbird Bend I,* this Court did place the burden on Plaintiffs. However, the Court also stated that this burden allocation was in no way dispositive. The Court was convinced that its findings were supported by a preponderance of the evidence. 433 F.Supp. at 67.

in settling the controversy against the state. 707 F.2d at 308.

Basically the Court of Appeals ordered the Tribe to return to the beginning. The Tribe must prove on the merits its entitlement to the eastern Barrett Survey land before this Court's holding that the western lands were accretions would have any legal significance.[4] This, of course, demands that the Tribe show that from 1879 to 1923 the original boundary of the reservation remained unchanged because all river movements in that time period were avulsive.[5] The Court holds that the Tribe cannot prevail against the State of Iowa as to any lands included in the 700 acres and claimed by the state because it cannot sustain its burden of proof.

## FEE PATENT LANDS CLAIMED BY OTHER DEFENDANTS

The *Omaha III* Court imposed the identical burden of proof on the Tribe concerning fee patented lands claimed by the private Defendants. 707 F.2d at 309. Therefore, the discussion in the previous section of this Opinion fully applies here. The Tribe has the burden of proving by a preponderance of the evidence that the original boundary of the reservation remained the same because of avulsive movements of the Missouri River. For the reasons previously stated, the Court holds the Tribe failed to meet that burden.

## QUIETING TITLE IN THE DEFENDANTS

The foregoing findings and conclusions preclude quieting title in the Tribe to any of the 700 acres in question here, except for the land which was allotted and later relinquished to the Tribe. Does foreclosing the Tribe from a quiet title decree automatically mean that title is quieted in the Defendants?

The Court of Appeals latest opinion stated:

We therefore remand this case to allow the district court to determine whether the Tribe has met its burden of proof so defined herein. If it holds that the Tribe failed to meet its burden, it must then determine whether the private parties and the State of Iowa are entitled to have title to the tracts of land in controversy quieted in them.

*Omaha III*, 707 F.2d at 310.

This open-ended and unexplained directive seems to contemplate something more for the Defendants to prevail. The State of Iowa argues that because nothing more was required of the Tribe, failure of the Tribe to meet its burden should be sufficient here. However, the State's argument ignores a critical aspect of Section 194. Section 194 operates not only to shift the burden, but also to raise a presumption of title in the "Indian". *See supra* note 2. Of course, it is now settled that the Tribe is an "Indian" entitled to the benefits of Section 194. *Omaha Indian Tribe*, 442 U.S. at 665–7, 99 S.Ct. at 2536–7. Thus, when the Court of Appeals ordered title quieted in the Tribe, it appears that its ruling was founded on the presumption afforded the Tribe by application of Section 194.

Defendants, to the extent that they succeed, prevail on the basis of imposition of the burden of proof on the Tribe. They benefit from no corresponding presumption of good title. Therefore, considering the basis of the Court of Appeals' Order, it seems proper to allow Defendants to prevail only "upon the strength of their own title rather than on the weakness of that of

---

4.  As noted in the previous discussion in *Blackbird Bend II*, this Court stated:
    This Court does not deviate from its original judgment that the Missouri River moved over the Barrett Survey—in all relevant periods— by accretion ... 523 F.Supp. at 899.

5.  The *Omaha III* Court stated:

We did not hold that the Tribe established that the original boundary to the reservation remained unchanged by reason of avulsive movements from 1879 to 1923, thereby establishing continuing ownership of the Tribe in the trust land. *We deem such proof essential for the Tribe ... to establish [its] claim to the nontrust lands.*
707 F.2d at 310 (emphasis added).

the [Tribe]". *See Omaha III,* 707 F.2d at 310, n. 9.

The Court has carefully reviewed the Proposed Findings and Conclusions and Memoranda of Law submitted by the parties. It appears that the Court should determine the rights of the parties under the pleadings and evidence, and grant the proper relief by determining the better title as between the parties to the proceeding, even though a non-party may later assert a title superior to all the parties. 65 Am.Jur.2d, *Quieting Title,* § 46.

The Tribe argues that even if it fails to meet its burden, that title cannot be quieted in any other party. *See Memorandum of Points and Authorities in Opposition to Defendants' Request to Have Title Quieted in Them.* The Tribe argues that all titles are defective because they "are predicated on trespass originating in 1925 with 'squatter' Joe Kirk." Id. at p. 4.

However, this argument presumes the Tribe prevailed on the merits and established that as to the Tribe, Joe Kirk was a "trespasser" or "squatter". The Tribe failed to prove entitlement to the land on the merits. At this point, the private Defendants have produced record titles. *See* Wilson Exhibits W, X, Y, Z, AA and BB. This is sufficient to quiet title as against the Tribe. *See e.g. U.S. v. Oregon,* 295 U.S. 1, 25–26, 55 S.Ct. 610, 620, 79 L.Ed. 1267 (1935); *Omaha III,* 707 F.2d at 310, n. 9.

Likewise, the State of Iowa produced record title to the land it claims. See Exhibits M8, N8, O8 and T8. The title is not traceable to fee patents. However, it is better title than that produced by the Tribe. Therefore, the State of Iowa has presented a sufficient record to obtain a quiet title decree as against the Tribe. Because of the Court's disposition it is unnecessary to address the applicability of adverse possession.

## IMPROVEMENTS

In *Omaha III,* the Court of Appeals held: [T]he the duty to pay for the value of improvements is an element of the government's own claim [and] a condition precedent to the right of the United States to recover ...

707 F.2d at 312.

Therefore, it appears that quieting title in the land claimed by the Tribe must await disposition of the improvements issue and a survey of the parcels involved. The Court in its Order filed July 18, 1983 stated:

After the Court rules on land ownership questions, the case will be transferred back to the Northern District of Iowa for further proceedings deemed necessary to resolve the improvement issues and all remaining motions.

This Court will hear any dispute which would arise from reversal of this Opinion. Otherwise, the case will be transferred to Judge McManus in accordance with this Court's Order filed July 18, 1983.

## CONCLUSION

After eight years of litigation and appeals, land ownership in this case is not decided on the merits. All disputes involving the 2900 acres of land are settled simply by the apportionment of the burden of proof. The Tribe originally won its claim to 2200 acres because of the allocation of the burden which resulted from application of Section 194. The Court of Appeals held that the Defendants claiming the 2200 acres simply failed to meet their burden according to the Court of Appeals. The State of Iowa and Defendants claiming fee patent lands prevail here because of application of the burden of proof, absent the aid of Section 194. The Tribe failed to sustain its burden.

The Court happened upon an ancient legal maxim which appears appropriate here. "Idem est non probari et non esse; non deficit jus, sed probatio." Roughly translated, "What is not proved and what does not exist are the same; it is not a defect of the law, but of proof." Black's Law Dictionary, 5th ed. (1979).

This Opinion shall constitute the Court's findings of fact and conclusions of law.