OMAHA INDIAN TRIBE, Treaty of 1854 with the United States of America (10 Stat. 1043), Organized pursuant to the Act of June 18, 1934 (48 Stat. 984; 23 U.S.C. 476) as amended, Appellant,

v.

Harold JACKSON and Otis Peterson and the District Court of Iowa in and for Monona County, Appellees.

OMAHA INDIAN TRIBE, Treaty of 1854 with the United States of America (10 Stat. 1043), Organized pursuant to the Act of June 18, 1934 (48 Stat. 984; 25 U.S.C. 476) as amended, Appellants,

v.

AGRICULTURAL INDUSTRIAL INVESTMENT COMPANY; Roy Tibbals Wilson Estate; Charles E. Lakin; Florence Lakin; R.G.P. Incorporated, an Iowa Corporation; Harold Jackson; Otis Peterson; Travelers Insurance Company; Darrell L. Harold; and Luea Sorenson; State of Iowa and State Conservation Commission of the State of Iowa, Appellees.

UNITED STATES of America, Appellant,

v.

John R. WILSON, Charles G. Lakin, Florence Lakin, R.G.P. Incorporated, an Iowa Corporation, Harold Jackson, Otis Peterson, Travelers Insurance Company and the State of Iowa, Appellees.

Nos. 87–2042, 87–2191.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1988.

Decided Aug. 4, 1988.

William H. Veeder and Laura Frossard, Washington, D.C., for appellant.

John P. Sarcone, Asst. Atty. Gen., Des Moines, Iowa and Donald J. Buresh, Omaha, Neb., for appellees.

Before LAY, Chief Judge, FAGG, Circuit Judge, and DOTY,* District Judge.

LAY, Chief Judge.

This appeal involves the question of ownership in approximately 700 acres of land[1] formerly within the boundary of the Omaha Indian Reservation. Title to the total acreage is claimed by the Omaha Indian Tribe and is disputed in part by the State of Iowa and in part by individual non-Indian defendants. The overall area involved consists of approximately 2900 acres of land contiguous to the Missouri River on the interstate boundary between Nebraska and Iowa within an area known as the Barrett Survey. This litigation has a long history which need not be repeated here.[2]

This particular appeal arises from the remand by this court to the district court in *United States v. Wilson,* 707 F.2d 304 (8th Cir.1982), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 684 (1984) (hereinafter referred to as *Omaha III*). On remand, the district court found that the Tribe failed to carry its burden of proof that the past movements of the Missouri River between 1879 and 1923 were due to avulsion and therefore failed to establish title as to the land claimed by the State and fee patented to the private landowners. The district court therefore entered judgment quieting title in the land claimed by the State of Iowa and the land claimed by the fee patented private landowners. In doing so, the district court denied ownership to the Tribe as to any of these lands. *See United States v. Wilson,* 578 F.Supp. 1191 (N.D. Iowa 1984).

The district court also entered judgment against the United States in the amount of $1,921,177.85 for the net value of the improvements that the private defendant landowners and their predecessors had made to the land.[3] This was in accord with our prior decision in *Omaha III* in which we held that the doctrine of sovereign immunity did not bar the private landowners' suit against the government for the value of the improvements. 707 F.2d at 312. In so holding, we ruled that sovereign immunity was inapplicable "[b]ecause the duty to pay for the value of the improvements is an element of the government's own claim * * *". *Id.* The district court likewise awarded prejudgment interest accruing from July 5, 1975, the day the government was placed in possession of the disputed area as trustee for the Tribe. The district court also ruled that the court registry fund which had been accumulated by the Tribe since 1975 from the net profits realized from the land could not be used by the

---

* The HONORABLE DAVID S. DOTY, United States District Judge for the District of Minnesota, sitting by designation.

1. The specific tracts of land and the acreage involved are set forth in the district court decree of May 29, 1987.

2. The extensive and detailed facts are more fully set forth in the previous opinions in this on-going dispute. *See United States v. Wilson,* 578 F.Supp. 1191 (N.D.Iowa 1984); *United States v. Wilson,* 707 F.2d 304 (8th Cir.1982), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 684

(1984); *United States v. Wilson,* 523 F.Supp. 874 (N.D. Iowa 1981); *Omaha Indian Tribe v. Wilson,* 614 F.2d 1153 (8th Cir.), *cert. denied,* 449 U.S. 825, 101 S.Ct. 87, 66 L.Ed.2d 28 (1980); *Wilson v. Omaha Indian Tribe,* 442 U.S. 653, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979); *Omaha Indian Tribe v. Wilson,* 575 F.2d 620 (8th Cir.1978), *vacated and remanded,* 442 U.S. 653, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979); and *United States v. Wilson,* 433 F.Supp. 57 (N.D. Iowa 1977).

3. The parties stipulated that the net value of the improvements was $1,921,177.85.

government to satisfy its obligation to pay for the improvements.

The Tribe appeals the district court's findings as they relate to the fee patented land quieted in the private landowners and the land awarded to the State of Iowa. In doing so, the Tribe maintains that the district court failed to make sufficient findings as required by Fed.R.Civ.P. 52(a). The government appeals the award of prejudgment interest and also seeks to reverse the district court judgment that the court registry fund cannot be used to pay for the value of the improvements made upon the land. Finally, the private defendants claiming non-fee patented reservation land held in trust by the government maintain that 25 U.S.C. § 194 violates the due process clause of the fifth amendment. We affirm in part and reverse in part.[4]

## I. Discussion

### A. Tribe's Appeal

#### 1. *Omaha III* Mandate

In *Omaha III*, this court held that the Tribe had the burden of proof as to the land claimed by the State of Iowa and the fee patented owners. In doing so, we stated that

> Both the State of Iowa and the individual owners contend that the Tribe, to meet its burden of proof regarding the tracts of land now in controversy, must

prove that the river moved westward over the eastern Barrett Survey land between 1867 and 1923 by avulsion; in other words, they argue the Tribe must establish affirmatively how the river moved during the entire period of time relevant to this lawsuit. As indicated, we agree.

*Omaha III*, 707 F.2d at 310. In remanding to the district court, we specifically stated

> We therefore remand this case to allow the district court to determine whether the Tribe has met its burden of proof as defined herein. If it holds that the Tribe failed to meet its burden, it must then determine whether the private defendants and the State of Iowa are entitled to have title to the tracts of land in controversy quieted in them.

*Id.* (footnote omitted).

We believe that the district court properly implemented this directive and correctly interpreted the Tribe's burden. On remand, the district court stated:

> Basically the Court of Appeals ordered the Tribe to return to the beginning. The Tribe must prove on the merits its entitlement to the eastern Barrett Survey land before this Court's holding that the western lands were accretions would have any legal significance. This, of course, demands that the Tribe show that from 1879 to 1923 the original boundary

**4.** In this appeal, the Tribe also maintains (1) that the Department of Justice attorneys engaged in fraud and collusion in their representation of the United States as trustee for the Tribe, and (2) that 25 U.S.C. § 194 applies to the fee patented private defendant landowners. We find these claims to be without merit.

The Tribe first raised the charges that the Department of Justice attorneys engaged in fraud in 1976. However, the Tribe failed to again raise the issue until 1985 even though the case had been reviewed once by the Supreme Court and three times by this court. At that time, the district court held that the Tribe's motion to disqualify the government attorneys was "clearly untimely and merits no serious attention or consideration." The Tribe subsequently petitioned this court for a writ of mandamus alleging the same charges. This court not only dismissed the Tribe's petition as "frivolous and totally without merit" but also awarded the United States costs and attorney's fees as sanctions against counsel for the Tribe for filing

"a totally frivolous pleading." *In Re: Omaha Indian Tribe*, No. 86–1717 (8th Cir. July 18, 1986) (order denying petition for writ of mandamus.) In view of the foregoing, this court unequivocally determined prior to oral argument that it would not entertain this meritless issue.

We also reject the Tribe's challenge to our decision in *Omaha III* interpreting 25 U.S.C. § 194 to require the Tribe to prove the avulsion necessary to establish its title to the eastern portion of the Barrett Survey as a first step in claiming the fee patented land. This court's *Omaha III* decision with respect to this issue is the law of the case, and the Tribe has provided no basis which either compels or justifies our reconsideration. *See Handi Inv. Co. v. Mobil Oil Corp.*, 653 F.2d 391, 392 (9th Cir.1981) ("prior decisions of legal issues should be followed unless there is substantially different evidence at a subsequent trial or new controlling authority, or the prior decision was clearly erroneous and would result in injury.") (citations omitted).

of the reservation remained unchanged because all river movements in that time period were avulsive.

578 F.Supp. at 1195 (footnotes omitted).

On remand, the district court required the parties to submit post appeal findings of fact and conclusions of law. Based upon its subsequent evaluation, the district court stated that it would not alter its view of the evidence which had been exhaustively reviewed in prior decisions and concluded that the Tribe could not sustain its burden of proving the necessary avulsions. *Id.* at 1193. In view of our prior holdings that it was equivocal whether all relevant movements of the Missouri River were through accretion only, 575 F.2d at 648; 614 F.2d at 1160–61; and our belief that because of the passage of time involved, the party having the burden of proof inevitably may face insuperable barriers, 707 F.2d at 311, we conclude that the district court's findings are not clearly erroneous. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

■ On remand, the district court also determined, as required by this court, that the State of Iowa and private defendants were entitled to have title quieted in them to the state and fee patented lands respectively. 578 F.Supp. at 1196. Both the private landowners and the State produced record titles. In doing so, the district court therefore concluded that the State and private defendants had presented sufficient evidence to obtain quiet title decrees against the Tribe. *Id.* We determine that this holding is also not clearly erroneous. Based upon the foregoing, we therefore conclude that the district court complied with the mandate of *Omaha III* by reviewing the record in light of the burden of proof placed upon the Tribe, and affirm the district court's finding that the Tribe did not sustain its burden of proving that the Missouri River's movements were avulsive with respect to the non-trust lands within the Barrett Survey area.

### 2. Fed.R.Civ.P. 52(a)

■ We also reject the Tribe's claim that the district court failed to make sufficient findings as required by Fed.R.Civ.P. 52(a). Although rule 52(a) provides in relevant part that "[i]n all actions tried upon the facts without a jury * * *, the court shall find the facts specially and state separately its conclusions of law thereon * * *", this court has previously stated that "findings of a district court 'are adequate if they afford a reviewing court a clear understanding of the basis of the trial court's decision.'" *Lynch Corp. v. MII Liquidating Co.,* 717 F.2d 1184, 1187 (8th Cir.1983) (citation omitted); *see also Christensen v. Great Plains Gas Co.,* 418 F.2d 995, 1000 (8th Cir.1969) ("findings of fact should be with such specificity [so] as to afford a reviewing court a clear understanding of the ground for the trial court's decision * * *.") (citations omitted); *Falcon Equipment Corp. v. Courtesy Lincoln Mercury,* 536 F.2d 806, 808 (8th Cir.1976); *United States v. F.D. Rich,* 439 F.2d 895, 899 (8th Cir.1971).

The adequacy of the district court's findings in the instant case must be viewed against the extensive prior scrutiny of the evidence in this case not only by the district court on two occasions, but also by this court on three separate occasions and by the United States Supreme Court. This was the third time the district court had considered the evidence and rather than recatalogue the evidence a third time, the court referred to the prior decisions in this case for a full statement of the extensive evidence.

■ The Tribe faults the district court's findings on the basis that the district court reasserts that the relevant movement of the Missouri River was through accretion rather than avulsion. The Tribe argues that this court in *Omaha Indian Tribe v. Wilson,* 575 F.2d 620 (8th Cir.1978) (hereinafter referred to as *Omaha I*), held that these findings were speculative and not supported by substantial evidence. To the extent that the Tribe recites the historical record, its appraisal of the record is an accurate one. Although the district court in the remand of the present case states that it will not alter its view of the evi-

dence, 578 F.Supp. at 1193, the district court nevertheless acknowledges that: "the Court of Appeals has foreclosed that view becoming the foundation of a decision. As a result of this Court's view and the Court of Appeals mandates, no party can meet its burden of proving accretion or avulsion." *Id.* It is clear from the district court's opinion that the court in review of the overall evidence found that the Tribe failed to sustain its burden of proving that the Missouri River's movements were avulsive. Our analysis of the record is such that we must agree. In doing so, we again reject the district court's earlier findings relating to the trust lands and reaffirm our earlier judgment that those findings are based solely upon speculative and equivocal evidence. We agree, however, with the district court that the historical evidence demonstrates the same speculative foundation to sustain the Tribe's assertion that the river's movements were avulsive. We therefore conclude that the district court findings are sufficient for purposes of rule 52(a), are not clearly erroneous, and must be sustained.[5]

### B. Government's Appeal

In its cross-appeal, the government maintains that the district court erred both in determining that the government could not use the escrowed profits realized by the non-Indian lessees of the Barrett Survey land to satisfy its obligation of paying for the improvements on the land, and, in awarding prejudgment interest on the value of the improvements.

### 1. Court Registry Fund

 It is fundamental law that a trustee is entitled to reimbursement from the trust estate for expenses incurred which are beneficial to the trust beneficiary and not solely the trustee unless the expenses were incurred because of the personal fault or error of the trustee. *See* G.G. Bogert and G.T. Bogert, *The Law of Trusts and Trustees* §§ 801, 809 (2nd Ed.1981); *see also, duPont v. S. Nat'l Bank of Houston, Tex.,* 771 F.2d 874 (5th Cir.1985); *Morrissey v. Segal,* 526 F.2d 121 (2nd Cir.1975); *Warrick v. Comm'r of Internal Revenue,* 173 F.2d 905 (8th Cir.1949). In the instant case, the government is obligated by the judgment quieting title to pay for the substantial improvements on the land which, under the judgment, plainly accrue to the benefit of the beneficiary of the trust—the Omaha Indian Tribe. Because the judgment quieting title to the land in the United States in trust for the Tribe clearly benefits the Tribe, we therefore conclude that

---

5. In this appeal, the Tribe also maintains that the district court erred in not quieting title in favor of the Tribe as to the entire 6390 acres comprising Blackbird Bend, and, that it is not bound by the district court judgment quieting title to land within the Barrett Survey. Because this court's *Omaha III* mandate directed the district court to act only as to the State and fee patented lands *within* the Barrett Survey, we reject the Tribe's claims.

The Tribe's arguments patently ignore the fact that the scope of this litigation was clearly defined at its initial stages over 12 years ago. In 1976, the district court granted the *Tribe's* motion to consolidate for trial its own action in ejectment seeking land outside the Barrett Survey area and the government's equitable quiet title proceeding concerning the 2900 acres of land within the Barrett Survey area as trustee for the Tribe. The district court, moreover, subsequently severed the Tribe's claim to lands outside the Barrett Survey. The Tribe did not object to the district court's severance order either by motion for reconsideration, request for interlocutory relief, or in any of the subsequent appeals. Rather, the Tribe proceeded to trial in this quiet title action involving only the 2900 acres of land within the Barrett Survey. This has clearly been the subject matter throughout this entire litigation. Both the district court and this court have repeatedly recognized this fact. *See* 433 F.Supp. at 67–69, 74–75; 575 F.2d at 622, 623 n. 4, 651 n. 69; 523 F.Supp. at 902–03; 707 F.2d at 306–07, 310; 578 F.Supp. at 1192. Thus, the only matter properly before this court is whether the district court complied with this court's *Omaha III* mandate directing the district court to act only as to the State and fee patented lands within the Barrett Survey. *See Adamian v. Lombardi,* 608 F.2d 1224, 1228 (9th Cir.1979) (scope of review is limited to what the remand order required); *Thornton v. Carter,* 109 F.2d 316, 320 (8th Cir.1940) ("After a case has been brought to this court and decided and a mandate has been issued to the court below, a second appeal brings up nothing for revision but the proceedings subsequent to the mandate * * *.").

the liability imposed upon the government to reimburse the private landowners for the improvements as a condition precedent of the quiet title decree should be satisfied out of escrowed trust funds in the court registry fund.

In determining that the government can use the escrowed profits to satisfy its obligation of paying for the improvements on the land, we reject the district court's conclusion that the government was at fault for failing to seek quiet title to the trust lands for approximately fifty years. As indicated by the United States, there has been no showing that the government deliberately avoided instituting the quiet title action or was otherwise in bad faith, or that the Omaha Indian Tribe suffered in any way as a result of any alleged delay. Rather, the Tribe has obtained the substantial benefit of having the land within the Barrett Survey cleared, drained, and otherwise improved through the efforts of the non-Indian defendants.

### 2. Prejudgment Interest

■ As indicated, the government also argues in its cross-appeal that the district court erred in awarding prejudgment interest on the value of the improvements. In doing so, the government relies upon 28 U.S.C. § 2516(a) (1982) which provides that "[i]nterest on a claim against the United States shall be allowed in a judgment of the United States Claims Court only under a contract or Act of Congress expressly providing for payment thereof." *See also United States v. Sioux Nation of Indians,* 448 U.S. 371, 387 n. 17, 100 S.Ct. 2716, 2727 n. 17, 65 L.Ed.2d 844 (1980). The government claims that because there is no contractual or congressionally expressed statutory provision, it is not liable for prejudgment interest in the instant case. We disagree. In doing so, although we acknowledge that section 2516(a) codifies the traditional rule that the government does not pay prejudgment interest, we conclude that the traditional rule does not apply under the circumstances of this case.

The traditional rule codified in section 2516(a) issues from and is another attribute enjoyed by the United States under its sovereign immunity. However, as we recognized in *Omaha III,* the government's obligation to pay for the improvements made upon the land is not based upon the defendants' counterclaims, but rather, is an element of the government's own claim. 707 F.2d at 312. The equitable nature of the improvements claim, moreover, is distinctive from the types of claims in which section 2516(a) traditionally applies. As we earlier noted, the government seeks the intervention of equity to quiet title, and must do equity to obtain such equitable relief. *Id.* We therefore conclude that the principles of equity apply and the traditional rule embodied in section 2516(a) does not apply to the government's claim that it is not liable for prejudgment interest.

We believe, moreover, that the government's argument is both inconsistent and irreconcilable with the conclusion we reached in *Omaha III* that the government was not protected by sovereign immunity from reimbursing the defendants for the improvements they made upon the land. It would be incongruous to hold, as we did in *Omaha III,* that the government is not shielded by the doctrine of sovereign immunity from its obligation to pay the defendants for the improvements, and now conclude that the government is shielded by sovereign immunity from paying prejudgment interest on the net value of those same improvements. The defendants are entitled not only to the net value of the improvements they and their predecessors made to the land, but the full equivalent value of the improvements. This will be obtained only if the defendants are reimbursed for the net value of the improvements together with interest from June 5, 1975, the date when the United States and the Omaha Indian Tribe were placed in possession. We therefore conclude that the district court acted within its traditional equity powers, *see Weinberger v. Romero-Barcelo,* 456 U.S. 305, 313–14, 102 S.Ct. 1798, 1803–04, 72 L.Ed.2d 91 (1982), and in a manner entirely consistent with *Omaha*

*III* in determining that prejudgment interest should be awarded.

### C. Private Defendants' Appeal

■ Finally, the private defendants claiming non-fee patented reservation land held in trust by the government maintain that 25 U.S.C. § 194 effects an invidious discrimination on the basis of race contrary to the due process clause of the fifth amendment. We cannot agree. This court's decision in *Omaha I* with respect to this issue is the law of the case, and the private defendants have provided no basis which either compels or justifies this court's reconsideration. *See* 575 F.2d at 631 n. 18; *see also Handi Inv. Co. v. Mobil Oil Corp.,* 653 F.2d 391, 392 (9th Cir.1981) (citing *Kimball v. Callahan,* 590 F.2d 768, 772 (9th Cir.), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979); *White v. Murtha,* 377 F.2d 428 (5th Cir.1967)).

### II. Conclusion

The judgment of the district court denying the government's claim that it be allowed to use the court registry fund to satisfy its obligation to pay for the value of the improvements made upon the land is reversed. The remainder of the district court's judgment is affirmed.[6]

---

**6.** Our judgment in this appeal has no bearing whatsoever on the Tribe's claim to any land outside the boundary of the original reservation which is defined by the Barrett Survey. The judgment in the instant case neither prevents the Omaha Indian Tribe from prosecuting nor disposes of the Tribe's pending action to recover accretions to tribal lands against those defendants who now occupy land within the Blackbird Bend area but outside the boundary of the Barrett Survey area or to damages for trespass to those lands. However, the Tribe's pending claims to the remainder of the Blackbird Bend area is an action at law for ejectment in which the defendants might be entitled to a jury trial as opposed to the instant equitable quiet title proceeding. The Tribe's arguments also ignore the differing burdens of proof that apply to lands within the Barrett Survey area and those lands that are outside the Barrett Survey. This court in *Omaha I* and the Supreme Court in *Wilson* agreed that the imposition of the burden of proof upon the private defendants and the presumption of title in the Omaha Indian Tribe triggered the application of 25 U.S.C. § 194 because the area of land within and defined by the Barrett Survey was indisputably at one time a part of the Omaha Indian Reservation under the Treaty of 1854. *See* Treaty of March 16, 1854, art. 1, 10 Stat. 1043. Conversely, the application of section 194 is not controlling as it affects the areas outside the original reservation which is defined by the Barrett Survey. Thus, as we previously stated: "the same proof showing presumptive title (Treaty of 1854) to the reservation cannot govern any future litigation concerning lands outside the area." 575 F.2d at 651 n. 69. *See also One Lot Emerald Cut Stones and One Ring, v. United States,* 409 U.S. 232, 93 S.Ct. 489,

34 L.Ed.2d 438 (1972) (findings cannot be given binding effect in proceedings or portions of proceedings where the prevailing party has a higher burden of proof). Finally, there are numerous landowners outside the Barrett Survey area who have not participated in the trial or any of the appeals dealing with the Barrett Survey. To quiet title in the Tribe to the lands outside the Barrett Survey area which were not the subject matter of the trial proceedings would improperly deny these parties their constitutionally protected rights to be heard.

We sense as well the Tribe's misapprehension as to the effect of the district court's rejection of its claim of avulsion against the State and the fee patented land in the present case. In the suit relating to lands outside the Barrett Survey other than the State land and the fee patented lands, the Tribe's claim must rest on their newly established title to the trust lands within the Barrett Survey and proof of accretion to such trust land. In pursuing these claims, the Tribe need not prove avulsive movement of the river as a basis of their title to the trust lands. Title has now been quieted in the Tribe and this is now a historical and legal fact upon which they can make their claims to accreted lands. On the initial remand in *United States v. Wilson,* 523 F.Supp. 874 (N.D. Iowa 1981), the district court attempted to apply this rule to the State and fee patented lands. Our reversal was based upon the fact that this would allow the Tribe to bootstrap the section 194 presumption which was not applicable to the State or fee patented landowners. However, this principle does not govern the Tribe's claims to lands which may have accreted to the trust lands and which lie outside the Barrett Survey.