UNITED STATES of America, Appellee,

v.

John R. WILSON, Appellant,

Charles G. Lakin, Florence Lakin,

RGP Inc., an Iowa Corporation, Appellant,

Harold Jackson, Otis Peterson, Traveler's Insurance Company, and State of Iowa.

OMAHA INDIAN TRIBE, Treaty of 1854 with the United States of America (10 Stat. 1043), Organized pursuant to the Act of June 18, 1934 (48 Stat. 984; 25 U.S.C. 476) as amended,

v.

Harold JACKSON and Otis Peterson and the District Court of Iowa in and for Monona County.

OMAHA INDIAN TRIBE, Treaty of 1854 with the United States of America (10 Stat. 1043), Organized pursuant to the Act of June 18, 1934 (48 Stat. 984; 25 U.S.C. 476) as amended,

v.

AGRICULTURAL INDUSTRIAL INVESTMENT COMPANY; Roy Tibbals Wilson Estate; Charles E. Lakin; Florence Lakin; R.G.P. Incorporated, an Iowa Corporation; Harold Jackson; Otis Peterson; Travelers Insurance Company; Harold M. Sorenson, Darrell L. Sorenson; and Luea Sorenson; State of Iowa and State Conservation Commission of the State of Iowa.

No. 90–1209.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 7, 1991.

Decided Feb. 22, 1991.

Rehearing Denied April 23, 1991.

Raymond E. Walden, Omaha, Neb., for appellant.

Martin W. Matzen, Washington, D.C., for appellee.

1. The Honorable Edward J. McManus, Senior United States District Judge for the Northern District of Iowa.

2. This court previously had held that sovereign immunity did not bar the defendants' request for the value of improvements they made to the

Before LAY, Chief Judge, MAGILL and LOKEN, Circuit Judges.

PER CURIAM.

John R. Wilson, personal representative of Roy Tibbals Wilson, and R.G.P., Inc. appeal from the district court's [1] denial of their motion to require the United States, as trustee for the Omaha Indian Tribe, to pay additional prejudgment and post-judgment interest to satisfy a condition precedent to obtaining quiet title in tribal lands. We affirm the judgment of the district court.

The Omaha Indian Tribe ("Tribe") and its trustee, the United States, brought an action to quiet title in land on the Iowa side of the Missouri River, alleging that the land had been part of the Tribe's reservation on the Nebraska side before the river changed course by avulsion. Wilson and R.G.P., Inc. are non-Indians who had possession of part of the disputed land after the river shifted. In a series of cases beginning with this court's decision in 1978, the Tribe prevailed in its claim against the defendant landowners as to lands once within the Tribe's reservation. *Omaha Indian Tribe, Treaty of 1854 with the United States v. Wilson*, 575 F.2d 620 (8th Cir.1978).

On May 28, 1987, the district court ordered the United States to pay the defendants compensation for improvements made to the land during the time they were in possession as a condition precedent to obtaining quiet title in the tribal lands.[2] *United States v. Wilson*, Nos. 75–4024, 75–4026, 75–4067 (N.D.Iowa May 28, 1987) (order allowing value of improvements and interest on improvements). The court also ordered the United States to pay prejudgment and postjudgment interest on the value of the improvements. The court stated

land awarded to the Tribe because the government's duty to pay for the value of improvements was an element of its own claim. *United States v. Wilson*, 707 F.2d 304, 312 (8th Cir. 1982), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 684 (1984).

that "[t]he prejudgment interest shall be paid at the rate fixed by Nebraska law." *Id.* The court also stated that "[a]ny postjudgment interest shall be paid pursuant to the United States Code" and referred to 31 U.S.C. § 1304. *Id.* This court later affirmed the district court's award of prejudgment interest. *Omaha Indian Tribe v. Jackson,* 854 F.2d 1089, 1095 (8th Cir. 1988), *cert. denied,* 490 U.S. 1090, 109 S.Ct. 2429, 104 L.Ed.2d 986 (1989).

On August 17, 1989, the United States paid the defendants prejudgment *simple* interest at Nebraska's judgment interest rates in effect between June 5, 1975, and May 29, 1987.[3] The United States also paid postjudgment interest from November 2, 1987, through November 22, 1988, in accordance with 31 U.S.C. § 1304(b)(1)(A) (1988).

*Prejudgment Interest*

■ Wilson and R.G.P., Inc. argue the United States was required to pay compound prejudgment interest on the value of the improvements beginning March 24, 1982. They contend that Nebraska's eminent domain laws provide that a landowner who is displaced without prior full compensation for the property is entitled to compound interest on the delayed compensation. *See* Neb.Rev.Stat. § 76–711 (1990) (effective Mar. 24, 1982).[4] The defendants argue they should receive similar treatment under Nebraska laws because they were displaced from their land without prior payment of full compensation.

The district court held that the United States was not required to pay compound interest. The court reasoned that compensation in the form of compound interest is not allowed under Nebraska law absent a statute or contract. *See Abbott v. Abbott,* 188 Neb. 61, 65, 195 N.W.2d 204, 209 (1972). The court stated that the applicable statute, Neb.Rev.Stat. § 45–103 (1990), fixes the rate of prejudgment interest but does not require compounding of interest. The defendants' reliance on the Nebraska eminent domain laws is misplaced. The land in question was held to belong to the Tribe, not Wilson or R.G.P., Inc. The defendants are not former landowners because they never held title to the land. *See Omaha Indian Tribe, Treaty of 1854 with the United States,* 575 F.2d at 651. We therefore affirm the district court's opinion relating to prejudgment interest.

*Postjudgment Interest*

■ The district court entered judgment on May 29, 1987, but the United States did not pay the defendants until August 17, 1989. The United States paid postjudgment interest only from November 2, 1987, through November 22, 1988.

Wilson and R.G.P., Inc. now claim that the United States should have paid postjudgment interest from May 29, 1987, through August 17, 1989, pursuant to 28 U.S.C. § 1961 (Supp.1990),[5] because the United States, as Trustee for the Tribe, was in the same position as any other litigant. They reason that section 1304 provides for a limited waiver of sovereign immunity.[6] However, they contend that section 1304 is not relevant or applicable because our prior decision barred the United States from asserting sovereign immunity.[7] They therefore argue that they are entitled

---

**3.** The temporary injunction was issued on June 5, 1975, giving possession of the land to the Tribe; the district court's Final Judgment and Decree was dated May 29, 1987.

**4.** The defendants agree that simple prejudgment interest was appropriate from June 5, 1975, through March 23, 1982. They claim, however, that the prejudgment interest should have been compounded as of March 24, 1982, the effective date of the eminent domain amendments adopting compound interest.

**5.** Section 1961(a) and (b) provide in relevant part that "[i]nterest shall be allowed on any money judgment in a civil case" and that "interest shall be calculated from the date of the entry of the judgment ... to the date of payment." 28 U.S.C. § 1961(a), (b) (Supp.1990).

**6.** Pursuant to 28 U.S.C. § 2516(a) (1988), interest cannot be assessed against the United States unless a Congressional Act or a contract expressly provides for payment of interest.

**7.** *See supra* note 2.

to postjudgment interest for the full period from the date of judgment through the date of payment. The defendants also contend that section 1304 was not triggered because there was no judgment against the United States. *See* 31 U.S.C. § 1304(a)(3)(A) (1988). They claim that the United States' duty to pay money was merely an element of its own claim.

The Final Judgment and Decree of May 29, 1987, required the United States to pay the defendants postjudgment interest. *The order specifically referred to section 1304.* Neither party challenged this part of the order on appeal and it therefore became the law governing the case. *See Omaha Indian Tribe v. Jackson,* 854 F.2d 1089.

The district court applied section 1304 to calculate the amount of postjudgment interest due under the 1987 judgment. The court reasoned that there was a judgment against the United States within the meaning of section 1304 because the United States was required to pay money to the defendants under the judgment. We agree. The district court found section 1304 applied even though the sovereign immunity doctrine did not shield the United States from having to pay for the value of the improvements and prejudgment interest. The district court noted the reference to 31 U.S.C. § 1304 in the 1987 order.

28 U.S.C. § 1961(b) specifically incorporates the limitations of 31 U.S.C. § 1304(b)(1). Section 1304(b)(1) provides in relevant part:

> Interest may be paid from the appropriation made by this section-(A) on a judg-ment of a district court, only when the judgment becomes final after review on appeal or petition by the United States Government, and then only from the date of filing of the transcript of the judgment with the Comptroller General through the day before the date of the mandate of affirmance.

31 U.S.C. § 1304(b)(1)(A). We affirmed the district court's award of prejudgment interest in *Omaha Indian Tribe v. Jackson,* 854 F.2d at 1095, and the United States did not file a petition for certiorari. Therefore, under section 1304(b)(1)(A), the government's liability for postjudgment interest began on November 2, 1987, the date the General Accounting Office received a copy of the district court's judgment,[8] and was terminated on November 22, 1988, the day before the date of this court's mandate of affirmance.

We find no error in the district court's rejection of the defendants' claim for additional postjudgment interest.

Accordingly, the judgment of the district court is affirmed.

---

**8.** It is interesting to note that pursuant to the provisions of § 1304(b)(1)(A), the defendants could have extended the period of postjudgment interest by filing a copy of the district court's judgment with the General Accounting Office immediately after the judgment was entered.