United States Court of Appeals,

Fifth Circuit.

No. 92-1617

Summary Calendar.

TRANSCO LEASING CORPORATION, et al., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

UNITED STATES of America, Appellant,

v.

Brenda MANUEL, Individually and as Administratrix of the Estate of Wayne Manuel, Deceased,

Cynthia Manuel Ahart, Individually and on behalf of the Estate of Steven R. Ahart, Deceased, and

Sandra O. Dugal, on behalf of the minor Steven J. Ahart, American Excess Underwriters, Inc., Appellees.

June 8, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before GARWOOD, JONES and EMILIO M. GARZA, Circuit Judges.

GARWOOD, Circuit Judge:

In this Federal Tort Claims Act case, defendant-appellant, the United States, appeals the district court's award of postjudgment interest against it from the date of entry of the original judgment until the judgment is paid in full, contending that this award conflicts with 28 U.S.C. § 1961 and 31 U.S.C. § 1304(b) which govern the liability of the United States for postjudgment interest.[1] Agreeing with the United States that the district court erred by failing to apply section 1304(b), we vacate the postjudgment interest award and remand for reformulation thereof under section 1304(b).

**Facts and Proceedings Below**

This case involves the second consolidated appeal of two lawsuits arising from the 1982 midair collision of two private airplanes near Addison, Texas. The relevant facts are stated in our

[1]The damage award on which the interest accrued is not appealed.

prior opinion, *Transco Leasing Corp. v. United States,* 896 F.2d 1435 (5th Cir.1990). We are now concerned *only* with the issue of postjudgment interest.

After the crash, plaintiffs-appellees, the estates and wrongful death beneficiaries of the victims and the owners of the planes and their insurers sued each other and the United States. All of the claims were dismissed except the claims against the United States. Following a trial on the merits, the United States was found liable under the Federal Tort Claims Act (FTCA) due to the negligence of its air traffic controller. The United States appealed this judgment. We affirmed the holding that the United States was liable for the accident, affirmed some of the damage awards, eliminated others, reduced others and affirmed them as reduced, and, as to still others, in response to the contentions of the United States that these were excessive, we vacated and remanded to the district court for reconsideration of the amounts awarded for those particular items. *Transco Leasing Corp.,* 896 F.2d at 1451-57. On plaintiffs' petition for rehearing, we modified our judgment by authorizing "the award of post-judgment interest pursuant to 28 U.S.C. § 1961 and 31 U.S.C. § 1304(b)(1)(A). *See Brooks v. United States,* 757 F.2d 734, 740-741 (5th Cir.1985)." *Transco Leasing Corp. v. United States,* 905 F.2d 61 (5th Cir.1990).

Following this remand, the district court, on March 31, 1992, entered judgment, holding: "that each party entitled to recovery under this judgment, shall also recover of the United States postjudgment interest, accruing at the rate of 8.04% from the date of entry of the original judgment, October 11, 1988, until the recovery in this judgment is paid in full, together with costs of court." The United States moved to amend the judgment in respect to its award of postjudgment interest. This motion was denied. The United States appeals, challenging only the judgment's provisions for postjudgment interest.

## Discussion

The district court ordered that postjudgment interest accrue from the date of the original judgment until the United States pays the judgment in full. The United States contends that the district court erred in ignoring 31 U.S.C. § 1304(b)(1)(A). Appellees contend that section 1961 authorized the award of interest in this case. The issue on appeal is whether the liability of the United

States for postjudgment interest under 28 U.S.C. § 1961 is subject to the limits of 31 U.S.C. § 1304(b)(1)(A), and if so, how should postjudgment interest accrue in this case.[2]

"Interest is recoverable against the United States only when specifically provided for by statute" because only by statute can the United States waive its sovereign immunity. *Reminga v. United States,* 695 F.2d 1000, 1001-02 (6th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983) (citing *United States v. Goltra,* 312 U.S. 203, 206-08, 61 S.Ct. 487, 490, 85 L.Ed. 776 (1941)).

28 U.S.C. § 1961(c)(2) authorizes awards of postjudgment interest against the United States "as provided in subsection (b)." 28 U.S.C. section 1961(b) provides that interest shall be compounded daily "to the date of payment except as provided in ... section 1304(b) of title 31."[3] Thus, postjudgment interest awarded against the United States under section 1961 is subject to the limitations of section 1304(b). *Brooks,* 757 F.2d at 740; *United States v. Wilson,* 926 F.2d 725, 728 (8th Cir.1991) ("28 U.S.C. § 1961(b) specifically incorporates the limitations of 31 U.S.C. § 1304(b)(1)"); *Campbell v. United States,* 809 F.2d 563, 565 (9th Cir.1987). Section 1961 restricts the liability of the United States for postjudgment interest to amounts funded in section 1304. *Brooks,* 757 F.2d at 740 ("the FCIA [Federal Court Improvement Act of 1982] brought the United States within the general interest provision (28 U.S.C. § 1961), established a uniform rate of interest,

---

[2]We note that the United States served its Rule 59(e) motion by Federal Express. Under Federal Rule of Civil Procedure 5(c), service by *mail* is effective on mailing, while service by any other means is effective on delivery. The bar should be aware of the danger that service by Federal Express may not be service by mail. *See Prince v. Poulos,* 876 F.2d 30, 32 n. 1 (5th Cir.1989); *Audio Enterprises, Inc. v. B & W Loudspeakers of America,* 957 F.2d 406, 409 (7th Cir.1992) (Wisdom, J., sitting by designation). Because the timeliness of the service of the Rule 59(e) motion has never been questioned and because everything in the record indicates that service was timely in this case, we assume that it was. The issue of timeliness does not affect our jurisdiction to review the denial of the motion to amend as the notice of appeal was timely filed in any event.

[3]31 U.S.C. § 1304(b)(1)(A) provides:

> "Interest may be paid from the appropriation made by this section—
>
> (A) on a judgment of a district court, only when the judgment becomes final after review on appeal or petition by the United States Government, and then only from the date of filing of the transcript of the judgment with the Comptroller General through the day before the date of the mandate of affirmance;...."

but retained the limitation of interest running from the filing of the transcript to the date of affirmation"); *Lucas v. United States,* 807 F.2d 414, 423 (5th Cir.1986) (section 1304 applies to postjudgment interest in FTCA cases because section 1304 lists 28 U.S.C. § 2414 as one of the statutes covered thereby and section 2414 is the statutory authority for payment of judgments against the United States); *Desart v. United States,* 947 F.2d 871, 872 (9th Cir.1991). Section 1304(b), then, acts as more than an appropriation statute, it limits the *liability* of the United States for postjudgment interest, by limiting the waiver of sovereign immunity to the time periods it specifies. Accordingly, we reject appellees' contention that section 1304 is not controlling because it is an appropriation statute which determines which judgments and amounts the United States will pay, but does not determine whether or not the United States is liable for a particular judgment or award of interest.

Appellees' also contend that with a judgment authorizing an award of postjudgment interest, they could petition Congress for a special appropriation for the accrued, but unfunded, interest award. *Compare Desart,* 947 F.2d at 872 n. 3. Because 28 U.S.C. § 1961 and 31 U.S.C. § 1304(b) immunize the United States from liability, no judgment can be entered against the United States on this claim. Appellees' contentions are without merit.[4]

It is true that before 1977, the United States allowed itself to be sued through a general waiver of sovereign immunity and then paid its judgments by subsequent special appropriation. This method of proceeding was changed by the amendment of 31 U.S.C. § 724a in 1977, the amendment and renumbering of 31 U.S.C. § 724a to 31 U.S.C. § 1304(b) in 1982, the amendment of 28 U.S.C. § 1961 in 1982, and the repeal of 28 U.S.C. § 2411(b) in 1982. *Reminga,* 695 F.2d at 1002 (holding that nearly identical predecessor of section 1304(b)—31 U.S.C. § 724a—expressly limits the liability of the United States for postjudgment interest to period beginning with filing of judgment with Comptroller); *DeLucca v. United States,* 670 F.2d 843, 846 (9th Cir.1982) (holding that 31 U.S.C. § 724a overrode old section 2411(b) and limited the liability of the government for postjudgment

---

[4]Appellees can always petition Congress for whatever amount they desire, whether or not they have the benefit of a judgment.

interest).

Since no statute authorizes the award of postjudgment interest beyond the period specified in section 1304(b), the United States has not waived its immunity to such an award and remains immune from such liability.

The remaining questions involve applying section 1304(b)(1)(A)'s limits to this case. Under section 1304, interest begins to accrue when the judgment of the district court is filed with the Comptroller General and it ceases to accrue when the judgment becomes final on the day before the day the mandate of affirmance is issued by a court of appeal.

The district court held that postjudgment interest began accruing on the date of entry of the original judgment, October 11, 1988. We know, however, under section 1304(b)(1)(A) that interest should not begin to accrue until the day that the judgment is filed with the Comptroller General. As there have been several judgments in this case, the question becomes the filing of which judgment commenced the accrual period? When an appellate court substantially affirms the original judgment of the court below, interest properly accrues from the date the original judgment is filed with the Comptroller General because this is the date that the correct judgment should have been entered. *Brooks v. United States,* 757 F.2d at 740-41 & 741 n. 8 ("substantially affirms" includes appellate modification of judgment or remand for recalculation of damages). *See Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 835-36, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842 (1990) (interest does not accrue from original judgment where it is completely overruled on appeal). Because we have substantially affirmed the damage awards of the plaintiffs that remained parties to this action, the date that the original judgment awarding damages to these plaintiffs was filed with the Comptroller General is the appropriate trigger date. The record in this appeal does not reflect when this judgment was filed with the Comptroller General.[5] We therefore remand for a determination by the district court of when the October 1988 judgment was filed with the Comptroller General.

The district court held that postjudgment interest accrues against the United States until the

---

[5]One brief in this court suggests that the judgment entered by the district court on October 11, 1988 was filed with the Comptroller General on December 5, 1988.

judgment is paid in full.  Under section 1304(b)(1)(A), however, interest ceases accruing on the day before the mandate of affirmance when the judgment becomes final.  As there will be at least two mandates issued by this Court and the judgment of the district court will not technically become final until both are issued, the question becomes which mandate marks the day after which interest should cease accruing?  Section 1304(b)(1)(A) is silent concerning multiple appeals or mandates of affirmance in one case.  We are inclined to follow the Ninth Circuit's holding in *Desart,* 947 F.2d at 872, that when a judgment is affirmed on first appeal, but remanded for recomputation of damages, the mandate from the first opinion is treated as the section 1304 mandate of affirmance.  This result is consistent with the principle that strict statutory construction is proper where waivers of sovereign immunity are involved.  *Campbell,* 809 F.2d at 577.  While the first clause of section 1304(b)(1)(A) refers to interest being available only when a judgment becomes final, the last clause does not.  It only states that interest runs through the day before the mandate of affirmance.  Since the second clause does not mention final judgments, strict construction principles suggest that we find that the second clause means that postjudgment interest stops accruing with the first mandate of affirmance.  This immunizes and limits the liability of the United States.  We suggested this result in *Brooks,* 757 F.2d at 740-41, where we held that interest began accruing on the date of filing of the original judgment, even if the judgment was modified on appeal, because the appellate modifications still constituted a substantial affirmance.  Since our holding in the first *Brooks* appeal did not entirely set aside the district court's judgment, the first appeal was the mandate of affirmance marking the practical end of the litigation.  It follows then, that where the first appeal substantially affirms the judgment below and no subsequent appeal substantially challenges the prior rulings,[6] the mandate issuing from the first appeal marks the end of the accrual of postjudgment interest against the United States.[7]  Accordingly,

---

[6]Here the damage award itself was not appealed a second time, only the postjudgment interest was appealed.

[7]We recognize that there is another at least equally plausible interpretation of section 1304, namely that whenever the United States appeals any part of any judgment against it interest runs on the entire judgment until it is affirmed on appeal in all respects.  Nonetheless, since the doctrine of sovereign immunity applies, we construe the statute narrowly, and in a manner which parallels our construction of it in *Brooks,* and let Congress make any changes it desires.

we hold that interest ceased accruing the day before the mandate of affirmance issued in connection with our prior opinion on rehearing in this case.  Again, the record does not reflect the date that the mandate of affirmance was issued.  Normally, it would be issued twenty-one days after the opinion by the panel on rehearing, June 12, 1990, and the government's brief says that the date was July 11, 1992, but the matter can be ascertained precisely on remand.

In the normal course of events, the United States, acting in good faith, should have treated all uncontested portions of the March 1992 judgment as final and certified those amounts to the Comptroller for payment,[8] as done in the *Desart* case.  This would result in appellees not being unfairly prejudiced by the loss of postjudgment interest during the pendency of the second appeal by giving them the actual use of the money they are owed, as opposed to postjudgment interest thereon, during the second appeal.

### Conclusion

Although the district court followed the general rule for awarding postjudgment interest under 28 U.S.C. § 1961, it ignored the exception stated in section 1961 that awards of postjudgment interest against the United States are subject to 31 U.S.C. § 1304(b)(1)(A).  Accordingly, we vacate the judgment below only so far as it pertains to postjudgment interest and we remand for a reformulation of the postjudgment interest award consistent with 31 U.S.C. § 1304(b)(1)(A) and this opinion.

VACATED in part and REMANDED.

---

[8]And, it may well have done so.