933 F.2d 1462
 19 Fed.R.Serv.3d 1044
 OMAHA INDIAN TRIBE, TREATY OF 1854 WITH THE UNITED STATES
(10 Stat. 1043), Organized pursuant to the Act of
June 18, 1934 (48 Stat. 984; 25 U.S.C.
476) as amended, Appellant,
v.
TRACT I--BLACKBIRD BEND AREA: Agricultural and Industrial
Investment Company; American Telephone & Telegraph Company;
Edith Benjamin; Herbert Nelson Benjamin; Maurice Louis
Benjamin; James Brooks Benson; Helen Bentley; George R.
Boulden; Matilda Boulden; Vasco Boulden; Cleo Cox; John
K. Craford; M. George Craford; Ruth Craford; Phyllis
Dale; Gladys Durr; Lloyd Fletcher; Frank Carlton Follett;
Great Lakes Pipeline Company; Alma Schmidt Henderson;
Iowa Public Services Company; Harold Jackson; Letha
Jenkins; Rose Ann Kane; Bertha Kirk; Harriet Kirk; Mary
Ann Kiskadon; Charles E. Lakin; Florence Lakin; Albert J.
Larson; John H. Lund; Ruth J. Lund; Magnolia Pipeline
Company; Ethel McCoy; Mid-American Pipeline Company;
Mid-Continent Eastern Pipeline Corporation; Monona County
Rural Electric Cooperative; Northern Natural Gas Company;
Arthur Orr; Robert Orr; Otis Peterson; R.G.P.
Incorporated, an Iowa Corporation; Anena Ruth; George C.
Ruth; Richard A. Ruth; Jean M. Ruth; Fred Sanders; Fred
E. Sanders; Rosalie Sanders; Socony Vacuum Oil Company;
Darrell L. Sorenson; Harold Sorenson; Harold M. Sorenson;
Luea Sorenson; Fred Stangel; State of Iowa, State of Iowa
Conservation Commission; Edward L. Torticilli; Mary A.
Torticilli; Regina Marie Torticilli; Travelers Insurance
Company; Ariel Virtue; W.W. Virtue; Willaday Farms, Inc.;
Ross O. Willey; Vincent R. Willey; Williams Brothers
Pipeline Company; Roy Tibbals Wilson, Appellees,
Tract II--Monona Bend Area: Agricultural & Industrial
Investment Company; Karen Anderson; Richard L. Anderson;
Eva Carlson; Harold Carlson; Mildred Orr Carter; Hazel
Clark; Kenneth Clark; Chris Christensen; Barbara Dahl;
Clara Grace Dahl; Gordon Dahl; Doris Dufrene; Harold B.
Dufrene; Myrva Everett; R.J. Everett; Lloyd P. Fender;
Verna Pearl Fender; Gertrude Gibler; Alma Schmidt
Henderson; J.B. Hicks; Substitute Trustee for Mildred C.
Hicks; Maude B. Hudgel; Ramona Orr Huff; Henry L. Jester;
James Kent; Sue Kent; Carroll Koenig; Lorraine Kutzler;
Emma Johanna Olson; Alice Parker; Nadine Parker; Wallace
G. Parker; L.S. Raines; Carol Ann Reitan; Robert E.
Reitan; Donald L. Rup; Lillian C. Rup; Roy R. Rupp; Don
E. Ruth; Joyce M. Ruth; Don E. & Joyce M. Ruth
(Commercial); Edna J. Sporder; Lillie Mae Stevens; Roy T.
Sorenson; Wilbur L. Stokely; Dan K. Weaver, Appellees,
Tract III--Omaha Mission Bend Area: Emily S. Blair; Donna
C. Ford; Frances Goodman; Ray L. Grosvenor; Iowa Public
Service Company; Iowa State Conservation Commission; Hazel
I. Jacobson; Joan S. Jacobson; William S. Jacobson;
Minnie Marble; Coy W. McFarland; Maude E. McFarland; Ruby
McFarland; Fred E. Nelson; Gladys E. Nelson; Lloyd E.
Nelson; Carolyn Ann Nelson; Larry L. Nelson; Ernest L.
Olson; Bernard M. Olson; Larry M. Olson; Leland M. Olson;
Harold Queen; John M. Ropes; Clyde H. Rush; Glen Swan;
Grace Swan; Ethel Swan; P.C. Swan; Harry D. Taylor;
Majayne Ropes Weber, Appellees.
 No. 90-2133.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 7, 1991.
Decided May 28, 1991.
Rehearing and Rehearing En Banc
Denied July 31, 1991.
 
 William Veeder, Washington, D.C., for appellant.
 Wiley Mayne, Sioux City, Iowa, and Peter Peters, Council Bluffs, Iowa, for appellees.
 Before LAY, Chief Judge, and MAGILL and LOKEN, Circuit Judges.
 PER CURIAM.
 
 
 1
 The Omaha Indian Tribe ("Tribe") appeals from the district court's[1] order, issued as a sanction pursuant to Federal Rules of Civil Procedure 16(f) and 41(b), granting the defendants' motions to dismiss with prejudice the Tribe's action to quiet title to lands located in Monona Bend, Omaha Mission Bend, and Blackbird Bend outside the Barrett Survey. On appeal, the Tribe argues that it was denied due process. We affirm the judgment of the district court.
 
 I.
 
 2
 In 1854, the Tribe and the United States entered into a treaty which reserved for the Tribe certain lands located west of the "centre of the main channel of said Missouri river." Act of March 16, 1854, Art. 1, 10 Stat. 1043. The treaty established the Missouri River as the eastern boundary of the Tribe's reservation. After 1854, the Missouri River moved in such a way as to cause the boundary of the reservation to move eastward to the Iowa high bank.
 
 
 3
 In 1975, the United States, as trustee for the Tribe, brought suit to quiet title to land lying adjacent to the Missouri River in an area called Blackbird Bend in Monona County, Iowa. The United States alleged that the land had been part of the Tribe's original reservation on the Nebraska side of the Missouri River before the river changed course. The United States claimed approximately 2900 acres of land lying inside the Barrett Survey in Blackbird Bend. The Tribe subsequently filed two additional lawsuits to quiet title to land situated in Monona County. Specifically, the Tribe claimed land in the Blackbird Bend Area, the Monona Bend Area, and the Omaha Mission Bend Area. The lands located inside the Barrett Survey Area in Blackbird Bend were originally part of the Omaha Indian Reservation; however, the lands located in Monona Bend, Omaha Mission Bend and Blackbird Bend outside the Barrett Survey Area were not part of the Tribe's original reservation.
 
 
 4
 The three lawsuits were consolidated for trial in 1976. The trial court later severed the Tribe's claims to lands located outside the Barrett Survey Area in the interests of judicial convenience and economy. The action to quiet title to lands located in Blackbird Bend inside the Barrett Survey is referred to as the consolidated case; the unconsolidated case involves the Tribe's claims to lands lying outside the Barrett Survey. In 1979, the court stayed further proceedings in the unconsolidated case pending the outcome in the consolidated case. Litigation in the consolidated case, hopefully, has come to rest.[2]
 
 
 5
 On June 15, 1987, the trial court reactivated the unconsolidated case. This appeal concerns approximately 8000 acres of land situated in Monona Bend, Omaha Mission Bend and Blackbird Bend outside the Barrett Survey Area. The defendants are owners of land in Monona County, Iowa. The United States is not a party in the present action. The land involved in the immediate case was not part of the original reservation. The Tribe's claim, therefore, is an action at law for ejectment rather than an equitable title proceeding. See Omaha Indian Tribe v. Jackson, 854 F.2d 1089, 1096 n. 6 (8th Cir.1988). The Tribe's general theory is that its reservation was enlarged when the Missouri River moved away from the reservation and towards the Iowa bank by erosion and accretion. The Tribe claims, however, that the river then moved west back towards Nebraska by avulsion, leaving reservation land on the Iowa side of the river.
 
 
 6
 The facts and circumstances which lead up to the dismissal of the Tribe's case with prejudice are extraordinary. Counsel for the defendants residing in Monona Bend and Omaha Mission Bend submitted interrogatories to the Tribe requesting the names of their experts and the facts known and opinions held by them in accordance with Rule 26(b)(4) of the Federal Rules of Civil Procedure. When the Tribe failed to respond, the defendants filed motions to compel discovery. The defendants also served a request for production of documents on the Tribe. On January 26, 1989, United States Magistrate John A. Jarvey granted the defendants' motions to compel discovery and ordered the Tribe to answer the interrogatories and comply with the request for production of documents by August 1, 1989. Magistrate Jarvey further ordered the Tribe to designate its witnesses by April 1, 1989. The Tribe subsequently filed a motion for reconsideration of the January 26, 1989 order and requested the court to stay all proceedings. On June 6, 1989, after learning that the Tribe had failed to designate its experts, Magistrate Jarvey sanctioned the Tribe by limiting it to the expert opinions given at the first trial in the consolidated case.
 
 
 7
 The case was set for trial on November 6, 1989. On August 18, 1989, Magistrate Jarvey ordered the parties to submit a proposed final pretrial order to him by September 1, 1989, and scheduled a final pretrial conference for September 8, 1989. The parties met in Sioux City, Iowa on August 22 and 23, 1989, to prepare a final pretrial order. On September 13, 1989, five days after the final pretrial conference was held, Magistrate Jarvey ordered the Tribe to submit a revised proposed final pretrial order to him by September 25, 1989. Magistrate Jarvey stated in his order:
 
 
 8
 "the court ... was unable to accomplish virtually any of the objectives of a final pre-trial conference due to [the Tribe's] ... complete failure to provide an acceptable proposed final pre-trial order.... Instead of providing one cohesive integrated document, counsel for ... [the Tribe] simply gathered the proposals of the parties and stapled them together. The parties were even unable to stipulate that the Tribal Council is the governing body for the ... [Tribe]."
 
 
 9
 Magistrate's Order at 1-2 (Sept. 13, 1989). He then ordered the parties to "make a good faith attempt to narrow the issues to those truly in dispute." Id.
 
 
 10
 On September 20, 1989, the Tribe filed a motion to reconsider the magistrate's orders dated June 6 and September 13, 1989. On September 29, 1989, Judge Edward J. McManus issued an order granting the Tribe's motion with respect to the designation of its experts. Although Judge McManus agreed with Magistrate Jarvey that the Tribe's designation of witnesses and answers to interrogatories failed to "provide ... any meaningful statement of opinions and facts on which the experts are expected to testify, and ... [to include] a summary of the grounds for each opinion," he concluded that "the defendants are familiar enough with this litigation that they will not be severely prejudiced if the Tribe's experts are permitted to testify." District Court's Order at 3 (Sept. 29, 1989). Judge McManus also stated in his order that "[t]he Tribe's dismal history of noncompliance with the orders of this court is well documented. The Tribe's failure to submit the revised proposed final pre-trial order on time is yet another example of its noncompliance." Id. at 4. Judge McManus then stated that the Tribe's case would be dismissed with prejudice unless the Tribe delivered to the magistrate by October 16, 1989 a revised proposed pretrial order in the form required by the court.
 
 
 11
 Throughout the course of this litigation the Tribe has continued to allege that the Department of Justice attorneys participated in fraud and collusion in their representation of the United States as trustee for the Tribe by limiting the Tribe's claims in the consolidated case to lands inside the Barrett Survey. Counsel for the Tribe continues to argue fraud notwithstanding this court's previous holdings that the Tribe's fraud argument is without merit. Omaha Indian Tribe v. Jackson, 854 F.2d at 1092 n. 4; In re Omaha Indian Tribe, No. 86-1717 (8th Cir. July 18, 1986) (order denying petition for writ of mandamus).
 
 
 12
 After the parties met in Sioux City, Iowa to prepare a final pretrial order, the defendants filed motions for sanctions. On October 5, 1989, Judge McManus granted the defendants' motions for sanctions and ordered the Tribe to pay all the reasonable fees and expenses related to the defendants' attendance at both the preliminary conference on August 22 and 23, 1989, and the hearing on September 8, 1989. Judge McManus stated that "the Tribe was unprepared, combative, and failed to endeavor in good faith to satisfy the purpose of ... [the preliminary] conference or the final pretrial conference held ... on September 8, 1989." District Court's Order at 3 (Oct. 5, 1989). To demonstrate the Tribe's lack of good faith at the pretrial conference, Judge McManus noted that counsel for the Tribe, William Veeder, responded to a defendant's inquiry concerning the Tribe's failure to bring a proposed statement of undisputed facts to the conference as follows: "I never agreed on anything in 13 years. We'll just go ahead that way." Id. Judge McManus concluded that "[t]he Tribe's lack of preparation and failure to follow the court's standard form for pretrial orders resulted in the Tribe's submission of a wholly unacceptable proposed final pretrial order, and a substantially futile pretrial conference on September 8, 1989." Id. Judge McManus also ordered the Tribe to refrain from referring to the fraud argument. Pursuant to Judge McManus' order dated September 29, 1989, the Tribe delivered its proposed pretrial order to the magistrate and filed a motion to file its pretrial order on October 16, 1989.
 
 
 13
 Late in the discovery process, the defendants deposed the Tribe's expert witnesses with respect to the lands located in Monona Bend and Omaha Mission Bend and learned that the Tribe had failed to disclose certain avulsions in its answers to interrogatories and its proposed pretrial order. The defendants then moved to dismiss the plaintiff's case. On December 5, 1989, the Tribe filed a motion for a hearing to address the defendants' charges that the Tribe deliberately misled them.
 
 
 14
 On January 12, 1990, Judge McManus recused himself from the case on the grounds that physical circumstances and other commitments prevented him from undertaking an extended trial in Sioux City, Iowa. Judge Warren K. Urbom from the District of Nebraska was subsequently appointed to the case.
 
 
 15
 On January 16, 1990, Magistrate Jarvey denied the Tribe's motion to file the final pretrial order because it did not "comply with previous [court] orders directing its preparation" and did not "reflect the status of this litigation." Magistrate's Order at 1-2 (Jan. 16, 1990). After Judge Urbom reviewed the record de novo, he concluded in his memorandum and order dated May 7, 1990, that the Tribe failed to file an adequate proposed pretrial order. He specifically found that the Tribe had failed to make a good faith effort to arrive at any undisputed facts; that the Tribe's statement of legal issues was inadequate because it raised the frivolous fraud issue and improperly alleged that the Tribe was being forced to relitigate issues previously decided in the consolidated case; and that the Tribe had failed to disclose six alleged avulsions. Judge Urbom concluded that the Tribe should be sanctioned for failing to file an adequate proposed pretrial order and scheduled a hearing on the issue of sanctions for May 15, 1990.
 
 
 16
 On May 29, 1990, two weeks after the hearing was held on the sanctions issue, Judge Urbom granted the defendants' motions to dismiss the Tribe's suit with prejudice. Judge Urbom found the Tribe's noncompliance with court orders and rules intentional and conscious. He stated:
 
 
 17
 The plaintiff's failure to file an acceptable proposed pretrial order, which includes its failure to reveal adequately the testimony of its expert witnesses, is evidence of a systematic pattern of failure to comply with court rules and court orders. Court proceedings have repeatedly been delayed by the plaintiff's failure to sufficiently comply with discovery orders. Having balanced the consequences of denying the plaintiff its day in court with the countervailing interests in preserving respect for this court and preventing undue delay, I find no option but to dismiss the plaintiff's case with prejudice.
 
 
 18
 District Court's Memorandum and Order at x (May 29, 1990). Judge Urbom also denied the Tribe's motion for a hearing concerning the defendants' charges that the Tribe deliberately misled them. Judge Urbom reasoned that the Tribe already had an adequate opportunity to address those charges by motion and at the hearing on the issue of sanctions.
 
 
 19
 Judge Urbom also considered other possible sanctions including holding the Tribe's counsel, William Veeder, in contempt, assessing monetary sanctions against the Tribe, disqualifying the Tribe's counsel from further participation in the case, requiring the Tribe's counsel to associate with local counsel, limiting the Tribe's counsel to the expert testimony that was contained in the proposed pretrial order, and limiting the Tribe's counsel to the expert testimony given in the consolidated case. He concluded, however, that no sanction other than dismissal could remedy the Tribe's record of "past and intended future noncompliance" with court orders. Id. at ii.
 
 
 20
 On June 8, 1990, the Tribe filed a motion for reconsideration of the district court's order of dismissal. The Tribe's motion was denied on June 14, 1990. The Tribe filed a notice of appeal on July 11, 1990.[3]
 
 II.
 A. Law of the Case
 
 21
 In its brief on appeal, the Tribe argues that the Department of Justice attorneys who represented the United States as trustee for the Tribe participated in fraud by limiting the Tribe's claims in the earlier action to land inside the Barrett Survey in Blackbird Bend. The Tribe also contends that Judge McManus "fully supported" and "effectuated" the fraud practiced on the Tribe by "forcing upon ... [the] Tribe the rejected representation" of the Department of Justice attorneys. Appellant's Brief at iv, 8. The Tribe further argues that the Tribe was denied "its Constitutional right of due process to initiate its own law suit and to prosecute that law suit" as a result of Judge McManus's alleged judicial misconduct. Id. at v. The Tribe also alleges that Judge Urbom became a "participant in the judicial cover-up of the fraud" by refusing to address the charges against Judge McManus. Id. at 24-25. The Tribe contends that Judge Urbom "adopt[ed] Judge McManus['] violations of judicial integrity and embrac[ed] the false and perverted charges made by the ... [defendants] and Judge McManus against ... [the] Tribe." Id. at 25. The Tribe further alleges that Judge Urbom's "bias and prejudice against ... [the] Tribe" surfaced in his May 29, 1990 order. Id. at 34. The Tribe concludes that "[t]he bias, prejudice, and aggressive partiality for the ... [defendants] by Judge Urbom and Judge McManus in accepting ... [the defendants'] charges against ... [the] Tribe ... while completely denying ... [the] Tribe the right to be heard and [the right] to refute those charges ... is the very essence of denial of Due Process." Appellant's Reply Brief at 20.
 
 
 22
 In Omaha Indian Tribe v. Jackson, 854 F.2d at 1092 n. 4, we held that the Tribe's claim that the Department of Justice attorneys participated in fraud was without merit. Moreover, when the Tribe petitioned this court for a writ of mandamus alleging fraud, we dismissed the Tribe's petition as "frivolous and totally without merit" and sanctioned the Tribe's counsel by awarding the United States costs and attorney's fees. In re Omaha Indian Tribe, No. 86-1717 (8th Cir. July 18, 1986) (order denying petition for writ of mandamus). This court has ruled on the Tribe's fraud claim and our prior decisions now stand as the law of the case. See Little Earth of the United Tribes, Inc. v. United States Dep't of Hous. & Urban Dev., 807 F.2d 1433, 1440-41 (8th Cir.1986) (finding law of the case doctrine prevents relitigation of settled issues).[4]
 
 B. Dismissal with Prejudice
 
 23
 The Tribe argues that Judge Urbom abused his discretion by dismissing the case with prejudice. We disagree.
 
 
 24
 The district court has authority to dismiss an action with prejudice for failure to comply with court orders or the Federal Rules of Civil Procedure. Fed.R.Civ.P. 41(b). Rules 16(f) and 37(b) also permit dismissal as a sanction for failure to obey the court's orders. Dismissal with prejudice should be used sparingly because it is a drastic sanction. Welsh v. Automatic Poultry Feeder Co., 439 F.2d 95, 96 (8th Cir.1971). We review a district court's decision to dismiss under the abuse of discretion standard. Garrison v. International Paper Co., 714 F.2d 757, 760 (8th Cir.1983). An action should be dismissed with prejudice "only after balancing the policy of giving the plaintiff her day in court against [the] policies of preventing undue delay, avoiding court congestion, and preserving respect for court procedures." Id.; see also Moore v. St. Louis Music Supply Co., Inc., 539 F.2d 1191, 1193 (8th Cir.1976); Navarro v. Chief of Police, Des Moines, Iowa, 523 F.2d 214, 217 (8th Cir.1975). "This balancing process 'focuses in the main upon the degree of egregious conduct which prompted the order of dismissal and to a lesser extent upon the adverse impact of such conduct upon both the defendant and the administration of justice in the District Court.' " Brown v. Frey, 806 F.2d 801, 804 (8th Cir.1986) (quoting Moore, 539 F.2d at 1193). The reviewing court should also consider whether the party whose action was dismissed willfully refused to comply with court orders. "Willful as used in the context of a failure to comply with a court order ... implies a conscious or intentional failure to act, as distinguished from accidental or involuntary noncompliance." Welsh, 439 F.2d at 97.
 
 
 25
 After reviewing the record as a whole, we conclude that the district court did not abuse its discretion in granting the defendants' motions to dismiss with prejudice the Tribe's action to quiet title. The record supports the district court's finding that the Tribe's failure to comply with the court's orders was intentional or willful, not inadvertent or accidental. The Tribe's conduct shows a pattern of noncompliance with court orders.[5] On June 6, 1989, the magistrate assessed sanctions against the Tribe for failing to comply with the court's January 26, 1989 order compelling discovery. Moreover, on September 29, 1989, the court warned the Tribe that its action would be dismissed unless the Tribe filed an adequate proposed pretrial order by October 16, 1989. The court dismissed the Tribe's quiet title action only after the Tribe failed to heed its warning. See Mangan v. Weinberger, 848 F.2d 909, 911 (8th Cir.1988) (finding dismissal with prejudice was appropriate when plaintiff failed to comply with an order to amend his pleadings), cert. denied, 488 U.S. 1013, 109 S.Ct. 802, 102 L.Ed.2d 793 (1989); Henderson v. Duncan, 779 F.2d 1421, 1425 (9th Cir.1986) (holding court properly dismissed the plaintiff's case after plaintiff's counsel failed to heed the court's warning that failure to submit an acceptable pretrial order would result in dismissal); Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir.1984) (finding court properly dismissed the plaintiff's claims after he disobeyed three court orders requiring him to amend his pretrial statement).
 
 
 26
 The district court properly found the Tribe's proposed pretrial order inadequate. First, the Tribe refused to stipulate to any undisputed facts in the proposed pretrial order. The Tribe's proposed pretrial order merely contained a list of separate submissions. To show the extent of the Tribe's recalcitrance, Judge Urbom noted that the Tribe would not even agree that the Tribal Council governs the Omaha Indian Tribe, or that the state of Iowa was admitted to the Union by an act of Congress on December 28, 1846.[6] The Tribe's behavior clearly violated Magistrate Jarvey's order that the parties "make a good faith attempt to narrow the issues to those truly in dispute." Magistrate's Order at 1-2 (Sept. 13, 1989).
 
 
 27
 Second, the Tribe's statement of legal issues was inadequate because it contained the fraud allegations. As discussed previously, this court had ruled that the fraud claim was without merit. Moreover, the district court's order dated October 5, 1989 specifically prohibited the Tribe from referring to the fraud claim.
 
 
 28
 Finally, the Tribe failed to disclose in its proposed pretrial order or its answers to interrogatories at least six avulsions in Omaha Mission Bend and Monona Bend. The defendants first learned of these avulsions when they deposed the Tribe's expert witnesses late in the discovery process. The Tribe's avulsion theories were critical to this quiet title proceeding. To prevail against the defendant landowners, the Tribe had to show that the disputed lands separated from the Omaha Indian Reservation and moved to the east side of the Missouri River when the river shifted by avulsion. In essence, the Tribe contends that the boundary of the reservation gradually and naturally expanded to include lands in Monona Bend, Omaha Mission Bend, and Blackbird Bend outside the Barrett Survey when the Missouri River moved back toward the Iowa bank by accretion.[7] The Tribe further argues that the disputed lands ended up on the Iowa side of the Missouri River when the river moved back toward Nebraska by avulsion.[8] The Tribe contends that it still owns the lands which accreted to the reservation even though they were later cutoff from the reservation by avulsion.[9]
 
 
 29
 The record also suggests that the Tribe intentionally pursued a pattern of delaying tactics. The Tribe filed numerous motions for an extension of time and for reconsideration or stay after the unconsolidated case was reactivated. In Garrison, 714 F.2d at 760, this court stated that dismissal with prejudice may be warranted if the plaintiff exhibits egregious conduct by engaging in a pattern of intentional delay.
 
 
 30
 Although the focus of this review is primarily on the egregiousness of the Tribe's misconduct, we must also consider the hardship to the defendants in determining whether dismissal with prejudice was proper. See Brown, 806 F.2d at 804. After reviewing the record, we find that the defendants would be unduly prejudiced if the Tribe was allowed to proceed with its quiet title action. As a result of the Tribe's refusal to comply with court orders, the defendants have had to pay excessive expenses and fees. Moreover, the defendants' titles to their property have been under a cloud since the Tribe filed its claim in 1975.
 
 
 31
 The Tribe also argues that Judge Urbom abused his discretion by dismissing the case with prejudice without allowing the Tribe the opportunity to respond to the defendants' charges that the Tribe misled them or to challenge the defendants' motions to dismiss. We find the Tribe's arguments lack merit. Judge Urbom denied the Tribe's motions for a hearing on these issues only after he held a hearing on the issue of sanctions. At the hearing on the issue of sanctions, the Tribe had an opportunity to address the defendants' charges that the Tribe intentionally concealed avulsions and to discuss possible sanctions short of dismissal.
 
 C. Sanctions
 
 32
 The defendants argue that this court should impose just damages and costs against the Tribe for filing a frivolous appeal pursuant to Rule 38 of the Federal Rules of Appellate Procedure. They contend that counsel for the Tribe wrongfully attacked the integrity of the court and its officers. They also argue that the Tribe's appeal improperly focused on the fraud issue.
 
 
 33
 We find the Tribe's fraud argument frivolous. Many of the Tribe's disrespectful comments about Judge McManus and Judge Urbom relate to the meritless fraud argument. On this basis alone, we assess double the costs of this appeal against the Tribe. See Anselmo v. Manufacturers Life Ins. Co., 771 F.2d 417, 421 (8th Cir.1985) (imposing sanctions for filing a frivolous appeal). We do not find, however, the appeal of the dismissal on the merits frivolous. This court, as did Judge Urbom, has agonized over the dismissal with prejudice of a party's claim when the primary fault of the dismissal can be traced to the recalcitrance and defiance of its counsel, William Veeder. Yet as the district court pointed out, for new counsel to attempt to master the vast amount of prior pleadings and discovery would indefinitely delay further progress in the case. Mr. Veeder, for whatever strategic purpose, has from the beginning of this overall litigation chosen to make the government, the trial and appellate judges, and the defendants, his targeted enemies. In the Tribe's brief, Mr. Veeder continues to exercise scurrilous disrespect for the judges involved in this case. He stands obsessed with the charges of fraud against the government and the complicity in such fraud by Judges McManus and Urbom. He maintains this charge notwithstanding this court's prior dismissal of such a claim, and he continues to inject this claim into the overall merits of the ejectment action. Mr. Veeder through his continued contumacious refusal to comply with the district court orders has done a great disservice to his client in important litigation. It is unfortunate in a case such as this that the client must live or die by the conduct of its counsel. In Link v. Wabash R.R., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the Supreme Court upheld the dismissal of an action on the grounds that the attorney failed to prosecute a claim. The Court stated:
 
 
 34
 There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."
 
 
 35
 Id. at 633-34, 82 S.Ct. at 1390 (citations omitted).
 
 
 36
 Once again, we do not review the dismissal de novo. Although the remedy is indeed harsh and prejudicial to the client, we find that the trial court exercised its judgment of discretion within the confines of legal principles. Under the circumstances, we must hold Judge Urbom did not abuse his discretion in dismissing the Tribe's action.
 
 III.
 
 37
 Given the extraordinary facts in this case, we find the district court did not abuse its discretion by granting the defendants' motions to dismiss with prejudice the Tribe's action to quiet title to lands located in Monona Bend, Omaha Mission Bend, and Blackbird Bend outside the Barrett Survey. We also assess double the costs of this appeal against the Tribe for raising the frivolous fraud issue. Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska
 
 
 [2]
 United States v. Wilson, 433 F.Supp. 67 (N.D.Iowa 1977); Omaha Indian Tribe v. Wilson, 575 F.2d 620 (8th Cir.1978), vacated and remanded, 442 U.S. 653, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979); Omaha Indian Tribe, Treaty of 1854 with the United States v. Wilson, 614 F.2d 1153 (8th Cir.), cert. denied, 449 U.S. 825, 101 S.Ct. 87, 66 L.Ed.2d 28 (1980); United States v. Wilson, 523 F.Supp. 874 (N.D.Iowa 1981); United States v. Wilson, 707 F.2d 304 (8th Cir.1982), cert. denied, 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 684 (1984); United States v. Wilson, 578 F.Supp. 1191 (N.D.Iowa 1984), aff'd in part and rev'd in part, Omaha Indian Tribe v. Jackson, 854 F.2d 1089 (8th Cir.1988), cert. denied, 490 U.S. 1090, 109 S.Ct. 2429, 104 L.Ed.2d 986 (1989); United States v. Wilson, 926 F.2d 725 (8th Cir.1991)
 
 
 [3]
 The defendants argue that the Tribe's appeal should be summarily dismissed because the Tribe failed to file its notice of appeal within thirty days after the date of the entry of judgment (May 29, 1990), as required by Rule 4(a) of the Federal Rules of Appellate Procedure. They claim that the Federal Rules of Civil Procedure do not recognize a motion for reconsideration. We disagree
 Courts generally view any motion which seeks a substantive change in the judgment as a Rule 59(e) motion if it is made within ten days of the entry of judgment. 6A J. Moore, Moore's Federal Practice p 59.12 (2d ed.1989). A motion to reconsider has been construed as a Rule 59(e) motion. See Wild v. St. Paul Cos., Inc., 612 F.2d 341 (8th Cir.1979); Seshachalam v. Creighton Univ. School of Medicine, 545 F.2d 1147 (8th Cir.1976), cert. denied, 433 U.S. 909, 97 S.Ct. 2974, 53 L.Ed.2d 1093 (1977). The Tribe's motion to reconsider is the functional equivalent of a motion to alter or amend the judgment.
 
 
 [4]
 The Tribe also urges this court to set aside the district court's post-judgment orders requiring the United States to satisfy its liability for improvements out of an escrow account which contains crop proceeds from land situated within the Barrett Survey. Because the district court's post-judgment orders simply conform to our holding in Jackson, 854 F.2d at 1094-95, we find the Tribe's argument meritless. We also find the Tribe has no legal interest in the division of the court registry fund between the United States and the private defendants. This court specifically held in Jackson that the government's liability to reimburse the private defendants for the improvements on the land should be satisfied out of escrowed trust funds in the court registry fund. Id
 
 
 [5]
 Although not a factor here, the same pattern of behavior occurred in the consolidated case. The record in the consolidated case shows that the Tribe was held in contempt on two occasions for violating the district court's orders granting possession of certain lands to the defendants. State of Iowa's App. at 9-14. Moreover, the court dismissed the Tribe's damage claim after the Tribe refused to comply with the court's orders compelling discovery. Id. at 7-8
 
 
 [6]
 Counsel for the Tribe, William Veeder, later admitted at the hearing on the issue of sanctions that these facts were uncontroverted. Agricultural Industrial Investment Company's App. at 75-76
 
 
 [7]
 An accretion is defined as "an addition to land coterminous with the water, which is formed so slowly that its progress cannot be perceived." Jefferis v. East Omaha Land Co., 134 U.S. 178, 193, 10 S.Ct. 518, 522, 33 L.Ed. 872 (1890). "[W]here running streams are the boundaries between States, ... when the bed and channel are changed by the natural and gradual processes ... [of] erosion and accretion, the boundary follows the varying course of the stream." Arkansas v. Tennessee, 246 U.S. 158, 173, 38 S.Ct. 301, 304, 62 L.Ed. 638 (1918)
 
 
 [8]
 An avulsion occurs when there is a
 sudden change of the banks of a stream such as occurs when a river forms a new course by going through a bend, the sudden abandonment by a stream of its old channel and the creation of a new one, or a sudden washing from one of its banks of a considerable quantity of land and its deposit on the opposite bank.
 III American Law of Property Sec. 15.26, at 855-56 (1952) (footnotes omitted).
 
 
 [9]
 It is a well-established proposition that
 if the stream from any cause, natural or artificial, suddenly leaves its old bed and forms a new one, by the process known as an avulsion, the resulting change of channel works no change of boundary, which remains in the middle of the old channel, although no water may be flowing in it, and irrespective of subsequent changes in the new channel.
 Arkansas, 246 U.S. at 173, 38 S.Ct. at 304.