45 F.3d 1241
 Donald L. RUPP; Alma Schmidt Henderson; Lenard F. Schmidt;
Betty J. Schmidt; Edward H. Schmidt; Shirley
Schmidt, Appellees,
v.
OMAHA INDIAN TRIBE, Appellant.
Donald L. RUPP; Alma Schmidt Henderson; Lenard F. Schmidt;
Betty J. Schmidt; Edward H. Schmidt; Shirley
Schmidt, Appellants,
v.
OMAHA INDIAN TRIBE, Appellee.
 Nos. 93-3103, 93-3106.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 11, 1994.
Decided Jan. 26, 1995.
Rehearing and Suggestion for
Rehearing En Banc Denied
March 9, 1995.
 
 Patrick B. Griffin, Omaha, NE, argued (Thomas D. Waldman, on the brief), for appellant.
 Peter J. Peters, Council Bluffs, IA, argued (Joe Cosgrove of Sioux City, IA, on the brief), for appellee.
 Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.
 MAGILL, Circuit Judge.
 
 
 1
 Omaha Indian Tribe (the Tribe) appeals the decision of the district court[1] quieting title and awarding damages against the Tribe. The Tribe argues that the court had no jurisdiction because the Tribe did not waive its sovereign immunity. Donald L. Rupp (Rupp), Alma Schmidt Henderson, Lenard F. Schmidt, Betty J. Schmidt, Edward H. Schmidt, and Shirley Schmidt (collectively referred to as Henderson) cross-appeal alleging the district court erred by refusing to award punitive damages and prefiling interest. We affirm.
 
 I. BACKGROUND
 
 2
 With a history as convoluted as the Missouri River, this case meanders up to us again.[2] A complete discussion of the underlying factual background is set forth in Omaha VI, 933 F.2d 1462. We will provide an outline of the relevant facts here.
 
 
 3
 Prior to 1955, Rupp and Henderson held title to tracts of land in Iowa adjacent to the eastern border of the Missouri River. At that time, these tracts were unaffected by the tribal lands in Nebraska bordering the west bank of the river. In 1955, the Corps of Engineers decided to change the course of the Missouri River and condemned a right of way in Rupp's and Henderson's lands. The Corps constructed a new channel for the Missouri River on the condemned land. This new channel left 230 acres of Rupp's and Henderson's land that was not condemned by the Corps as an island in the middle of the Missouri River. Gradually, the old Missouri channel on the west side of the Rupp and Henderson lands silted in and the Rupp and Henderson lands now lie in Iowa on the western side of the Missouri River.
 
 
 4
 In 1974, the Tribe physically took possession of the Rupp and Henderson lands. In 1975, the Tribe filed suits to quiet title to certain lands lying adjacent to the Missouri River in Monona County, Iowa, including the Rupp and Henderson lands, claiming it was within the Tribe's reservation. Specifically, the Tribe claimed land in the Blackbird Bend Area, the Monona Bend Area and the Omaha Mission Bend Area. Rupp and Henderson answered the Tribe's complaint and each counterclaimed to quiet title to certain portions of the land[3] set forth in the Tribe's complaint in their respective names.
 
 
 5
 On May 29, 1990, after a series of flagrant acts of misconduct by the Tribe and its attorney culminating in the Tribe's refusal to participate in the pretrial conference or writing the proposed pretrial order, the district court dismissed the Tribe's complaint as a discovery sanction. That dismissal was upheld by this court in Omaha VI, 933 F.2d 1462.
 
 
 6
 This dismissal resolved claims to all of the disputed land except as to Rupp and Henderson because the Tribe was physically occupying their land. After remand back to the district court, these counterclaims proceeded to trial. At trial, the Tribe was precluded from offering any witnesses or exhibits due to its failure to list any witnesses or exhibits in the pretrial order.
 
 
 7
 Upon remand, the Tribe asserted its sovereign immunity as an absolute defense to the Rupp and Henderson counterclaims. The district court determined that the Tribe had waived its sovereign immunity by virtue of a "sue or be sued" clause in its corporate charter. After trial, the district court quieted title to the disputed tracts in Rupp and Henderson; awarded fair rental value of Rupp's tract to Rupp in the amount of $601,976.99; awarded Henderson $175,703.21 as the fair rental value of her tracts for the period the Tribe occupied them; awarded both Rupp and Henderson postjudgment interest. The district court refused to award prefiling interest or punitive damages.
 
 
 8
 The Tribe appeals the decision of the district court, alleging that it possessed sovereign immunity from suit which it had not waived. Rupp and Henderson cross-appeal alleging the district court erred by refusing to award prefiling interest and punitive damages.II. BACKGROUND
 
 A. Sovereign Immunity
 
 9
 The Tribe argues that once its original suit was dismissed by the district court, it possessed sovereign immunity as to the Rupp and Henderson counterclaims. However, in oral argument, the Tribe conceded that it consented to the Rupp and Henderson counterclaims during the pendency of its suit.
 
 
 10
 Sovereign immunity is a jurisdictional question: if the Tribe possessed sovereign immunity, then the district court had no jurisdiction to hear the counterclaims. Puyallup Tribe, Inc. v. Washington Game Dep't, 433 U.S. 165, 172, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977). We review the district court's determination of jurisdiction de novo.
 
 
 11
 It is well established that Indian tribes possess sovereign immunity from suit that existed at common law. Rosebud Sioux Tribe v. A & P Steel, Inc., 874 F.2d 550, 552 (8th Cir.1989). The Tribe may waive this immunity. A waiver of sovereign immunity may not be implied, but must be unequivocally expressed by either the Tribe or Congress. Id. Tribes possess immunity because they are sovereigns predating the Constitution. American Indian Agric. Credit v. Standing Rock Sioux Tribe, 780 F.2d 1374, 1378 (8th Cir.1985).
 
 
 12
 The Tribe argues that it filed suit in its constitutional capacity and the district court erred when it determined that the "sue or be sued" clause contained in its corporate charter operated as a waiver to acts undertaken in its constitutional capacity. We need not decide whether the district court correctly determined that a waiver of sovereign immunity in its corporate charter acts as a waiver in all instances. We may affirm the judgment of the district court on any ground supported by the record, even if the district court did not rely on it. Monterey Dev. v. Lawyer's Title Ins., 4 F.3d 605, 608 (8th Cir.1993). We believe that the Tribe's act of filing suit to quiet title in the disputed lands, combined with explicit language found in its complaint and its explicit waiver of immunity with respect to the counterclaims during the pendency of its suit, constitutes an express and unequivocal waiver of the Tribe's sovereign immunity.
 
 
 13
 By initiating a lawsuit, the Tribe "waives immunity as to claims of the defendant which assert matters in recoupment--arising out of the same transaction or occurrence which is the subject matter of ... [the] suit." Rosebud Sioux Tribe, 874 F.2d at 552. The commencement of a lawsuit by itself does not, however, operate as a waiver of immunity with respect to compulsory counterclaims. Oklahoma Tax Comm'n v. Potawatomi Indian Tribe, 498 U.S. 505, 508-09, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991). Oklahoma Tax Commission held that a suit filed by the Potawatomi tribe to enjoin the state from collecting certain taxes did not waive the tribe's sovereign immunity with respect to a counterclaim to enforce the state's tax assessment and enjoin the tribe to collect state sales taxes in the future. Id. at 506-08, 111 S.Ct. at 908.
 
 
 14
 The Tribe did not merely file a quiet title action. The Tribe affirmatively requested the district court to order the defendants to assert any claims in the disputed lands they possessed against the Tribe and exercise its equitable powers to, among other things, quiet title in the Tribe's name. The Tribe requested the district court to order the defendants to:
 
 
 15
 appear and answer this Complaint setting forth in full their alleged sources of title, if any, in and to the lands and specifically describing the lands in and to which they claim any right, title, interest or estate within the Omaha Indian Reservation within the State of Iowa, all as specifically described [in this complaint]; the period during which they have occupied and/or asserted any right, title, interest or estate in and to those lands which are part of the Omaha Indian Reservation situated within the State of Iowa.
 
 
 16
 Appellant's App. at 52-53. This additional language explicitly requesting Rupp and Henderson to assert any "right, title, interest or estate" they may have in the disputed land is an unequivocal consent to any counterclaims asserted by Rupp and Henderson to quiet title and award damages in their respective names. Although waivers of sovereign immunity cannot be implied and are to be strictly construed in favor of the Tribe, this test is satisfied by the Tribe's affirmative request that Rupp and Henderson assert their claims in the disputed land.
 
 
 17
 This result is consistent with our decision in Standing Rock. In Standing Rock, we determined that the tribe did not waive its sovereign immunity simply because it entered into a loan with the American Indian Agricultural Credit Consortium, Inc. 780 F.2d at 1379. The loan agreement the tribe entered into, under a tribal council resolution, provided several remedies in the event of a default by the Standing Rock tribe, "in addition to such other and further rights and remedies provided by law," awarded attorney's fees expended in collection efforts and stated that the law of the District of Columbia governed the agreement. Id. at 1376. We stated that it would be easy to imply a waiver of sovereign immunity from these circumstances, but that such an implied waiver was prohibited by Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). We concluded that "nothing short of an express and unequivocal waiver can defeat the sovereign immunity of an Indian nation." We determined there was not an express and unequivocal waiver in Standing Rock because the loan agreement did not "expressly speak to Standing Rock's consent to suit or to waiver of immunity from suit", Standing Rock, 780 F.2d at 1376, although we agreed with the district court that Standing Rock had " 'clearly and unequivocally indicate[d]' its willingness to expose itself to suit on the note." Id. at 1377 (citation omitted). Here, however, the Tribe explicitly and expressly requested Rupp and Henderson to set forth any rights and title they may have in the disputed land. Consequently, the express and unequivocal waiver that was lacking in Standing Rock is present in this case.
 
 
 18
 Furthermore, by initiating this lawsuit, the Tribe "necessarily consents to the court's jurisdiction to determine the claims brought adversely to it." F. Cohen, Handbook of Federal Indian Law 324 (1982); see also United States v. Oregon, 657 F.2d 1009, 1014 (9th Cir.1981). We will not transmogrify the doctrine of tribal immunity into one which dictates that the tribe never loses a lawsuit. Oregon, 657 F.2d at 1014. When the Tribe filed this suit, it consented to and assumed the risk of the court determining that the Tribe did not have title to the disputed tracts. Moreover, requesting equitable relief from the federal district court constitutes an appeal to the sound discretion of the court; that a tribe is the plaintiff is immaterial. Jicarilla Apache Tribe v. Andrus, 687 F.2d 1324, 1333 (10th Cir.1982). By requesting equitable relief, the Tribe consented to the district court exercising its equitable discretion to resolve the status of the disputed lands. To hold that the district court could exercise its discretion to quiet title in favor of the plaintiff (the Tribe) but not the defendant (Rupp and Henderson) would be anomalous and contrary to the court's broad equitable powers. This case is distinguishable from Oklahoma Tax Commission. The tribe in Oklahoma Tax Commission only requested the district court to enjoin the state from collecting taxes from the tribe; it did not request the court to determine whether or not any taxes were in fact due and owing. 498 U.S. at 506-08, 111 S.Ct. at 908. Whereas, here the Tribe affirmatively requested the district court to resolve the ownership of the disputed land by asking the defendants to assert any right, title, interest or estate they may have in the disputed lands.
 
 
 19
 The district court's dismissal of the Tribe's complaint as a discovery sanction does not operate to revoke the Tribe's waiver of sovereign immunity. The Tribe attempts to condition its consent to Rupp's and Henderson's counterclaims to the pendency of the Tribe's suit. While it is true that "when consent to be sued is given, the terms of the consent establish the bounds of a court's jurisdiction," Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation, 673 F.2d 315, 320 (10th Cir.1982), this does not mean that the Tribe can condition its consent so as to flout the authority of the district court.
 
 
 20
 We confront here special circumstances striking at the core of the effective administration of justice. The history of abuses by the Tribe and its attorney leading to the dismissal of the Tribe's complaint is especially egregious. To hold, as the Tribe argues, that its consent to the counterclaims was conditioned upon the continuing vitality of its quiet title action effectively encourages the Tribe's flagrant disrespect of the court's authority and orders. The Tribe's original consent to the district court's jurisdiction to resolve all claims in the disputed lands is binding upon it. It cannot revoke its consent because it disagrees with decisions it authorized the district court to make by virtue of its filing suit. See Oregon, 657 F.2d at 1015. Additionally, allowing the Tribe to revoke its consent to suit allows them to disregard the district court order dismissing its suit as a discovery sanction.
 
 
 21
 Therefore, we hold the Tribe waived its sovereign immunity to the counterclaims because it clearly and unequivocally consented to suit.
 
 B. Prefiling Interest
 
 22
 Rupp and Henderson argue that the district court erred when it refused to award them interest from April 25, 1974--the date they were dispossessed from their property--until the filing of their counterclaims on April 23, 1976.
 
 
 23
 In Iowa, interest accrues from the time money is due and payable. If a claim is unliquidated, interest begins to run when the claim is liquidated. Woods v. Schmitt, 439 N.W.2d 855, 870 (Iowa 1989). Usually, liquidation occurs on the date of the judgment. Id. "An exception to the unliquidated claim rule exists when the damage is complete at a particular time, in which case interest runs from that time, although the damage has not been fixed in specific sum." Id. In such case, the award of prefiling interest under Iowa Code Ann. Sec. 535.2(1)(d) (1987) is appropriate.
 
 
 24
 If the right to recovery or the amount of damage is contested, the unliquidated damage exception does not apply because the damage is not complete. Breton Nat'l Bank of Des Moines v. Ross, 492 N.W.2d 441, 443 (Iowa App.1992). The district court was not aware of the exception to the unliquidated damage rule allowing prefiling interest. However, when the district court discussed the award of punitive damages, it found that "[t]he dispute over the right of occupancy has been a legitimate one and I cannot say that the Tribe knew or should have known that the counterclaimants had the right of possession or that it should have made a better investigation of that issue." Appellant's App. at 104. Accordingly, the district court found that the right to recovery was contested. Since we do not believe this finding was clearly erroneous, the exception to the unliquidated damages rule does not apply and Rupp and Henderson are not entitled to prefiling interest.
 
 C. Punitive Damages
 
 25
 Rupp and Henderson argue the district court erred in refusing to award punitive damages because it failed to take into account certain evidence. This evidence includes (1) a May 22, 1974 letter from the Bureau of Indian Affairs to the Tribe advising of a "truly disputed status" of the land subject to the Rupp and Henderson counterclaims; (2) the Tribe's use of force on several occasions to prevent entry to the disputed lands once subsequent to their possession in 1974; (3) the district court's finding on the merits of the counterclaim that the Tribe's possession and occupancy of the land has been illegal; and (4) the Tribe has continued to possess the disputed land after the district court order dismissing its suit on May 29, 1990.
 
 
 26
 We review the district court's decision not to award punitive damages for abuse of discretion. See Latham Seed v. Nickerson Am. Plant Breeders, 978 F.2d 1493, 1500 (8th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 3037, 125 L.Ed.2d 724 (1993). The district court correctly determined that to recover punitive damages in Iowa malice must be present. Bethards v. Shivvers, Inc., 355 N.W.2d 39, 47 (Iowa 1984). The presence of legal malice is sufficient to sustain an award of punitive damages. Id. Legal malice consists of "wrongful or illegal conduct committed or continued with a willful or reckless disregard of another's rights" or "the intentional commission of a wrongful act without just cause or excuse." Id.
 
 
 27
 In determining not to award punitive damages, the district court found that there was a legitimate dispute over the right of occupancy in the disputed lands. Although the court recognized that the Tribe had forcibly prevented access to the disputed lands once it was in possession, the court found that there was "no evidence that the original occupancy by the Tribe was by force or threat of force or that it should have known or could have discovered by reasonable investigation that it had no right of occupancy."
 
 
 28
 The Bureau of Indian Affairs letter merely advises the Tribe that there is a dispute as to their ownership of the land; it does not indicate any opinion as to who owns the land. Additionally, the district court order of May 29, 1990, only dismisses the Tribe's lawsuit as a discovery sanction. It does not award possession to or quiet title in Rupp and Henderson. Although the Tribe was precluded from quieting title to the disputed lands in its name, it is conceivable that it believed it could successfully defend against the counterclaims.
 
 
 29
 Were we making the initial decision, we would be inclined to award punitive damages. We cannot say, however, that the district court abused its discretion in denying punitive damages to Rupp and Henderson. The district court determined that the Tribe had not acted with legal malice because until the judgment entered after the trial of the counterclaims, there was a good faith dispute over who was entitled to occupy the disputed lands.
 
 III. CONCLUSION
 
 30
 For the forgoing reasons, we affirm the decision of the district court.
 
 
 
 [1]
 The Honorable Warren K. Urbom, Senior United States District Judge for the Northern District of Iowa
 
 
 [2]
 We have reviewed this action on six previous occasions. Omaha Indian Tribe, Treaty of 1854, Etc. v. Wilson, 575 F.2d 620 (8th Cir.1978) (Tribe has presumptive right of possession and title to land within original reservation survey against all defendants), vacated by 442 U.S. 653, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979) (Omaha I ); Omaha Indian Tribe, Etc. v. Wilson, 614 F.2d 1153 (8th Cir.) (upholding Tribe's presumptive right of possession and title to land within original reservation except as to claim against State of Iowa and severing claims of Tribe against State of Iowa), cert. denied, 449 U.S. 825, 101 S.Ct. 87, 66 L.Ed.2d 28 (1980) (Omaha II ); United States v. Wilson, 707 F.2d 304 (8th Cir.1982) (Tribe does not have presumptive right of possession and title to trust lands in suit against State of Iowa nor does it have presumption of possession and title in nontrust lands), cert. denied, 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 684 (1984) (Omaha III ); Omaha Indian Tribe v. Jackson, 854 F.2d 1089 (8th Cir.1988) (upholding prejudgment interest against government and allowing government to use escrowed funds to reimburse private landowners for improvements to trust lands), cert. denied, 490 U.S. 1090, 109 S.Ct. 2429, 104 L.Ed.2d 986 (1989) (Omaha IV ); United States v. Wilson, 926 F.2d 725 (8th Cir.1991) (per curiam) (government must pay simple prejudgment interest and liability for postjudgment interest which began on date General Accounting Office received copy of district court's judgment) (Omaha V ); and Omaha Indian Tribe v. Tract I--Blackbird Bend Area, 933 F.2d 1462 (8th Cir.) (per curiam) (dismissing Tribe's quiet title suit in nontrust lands as a discovery sanction), cert. denied sub nom. Omaha Indian Tribe v. Agricultural & Indus. Inv. Co., 502 U.S. 942, 112 S.Ct. 379, 116 L.Ed.2d 331 (1991) (Omaha VI )
 
 
 [3]
 The legal descriptions of the respective tracts of land are contained in the district court's order filed April 7, 1993. Appellant's App. at 100-02