**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 4 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GUIDIVILLE RANCHERIA OF CALIFORNIA, | No.   15-15221 |
| Plaintiff-Appellant, | D.C. No. 4:12-cv-01326-YGR |
| UPSTREAM POINT MOLATE, LLC, | |
| Plaintiff-Counter-Defendant-Appellant, | **MEMORANDUM**[*] |
| v. | |
| UNITED STATES OF AMERICA; RYAN ZINKE, Secretary of the Interior; MICHAEL S. BLACK, Acting Assistant Secretary - Indian Affairs, | |
| Defendants, | |
| and | |
| CITY OF RICHMOND, | |
| Defendant-Counter Claimant-Appellee. | |

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

GUIDIVILLE RANCHERIA OF CALIFORNIA,

          Plaintiff-Appellant,

 and

UPSTREAM POINT MOLATE, LLC,

          Plaintiff-Counter Defendant,

 v.

UNITED STATES OF AMERICA; RYAN ZINKE, Secretary of the Interior; MICHAEL S. BLACK, Acting Assistant Secretary - Indian Affairs,

          Defendants,

 and

CITY OF RICHMOND,

          Defendant-Counter Claimant-Appellee.

No.    15-17069

D.C. No. 4:12-cv-01326-YGR

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted February 14, 2017
San Francisco, California

Before:  GOULD and BERZON, Circuit Judges, and GARBIS,[**] District Judge.

This appeal presents a dispute between the City of Richmond, California ("the City"), a developer, Upstream Point Molate, LLC ("Upstream"), the Guidiville Band of Pomo Indians ("the Tribe"), and the United States[1] in connection with a proposed development project for Point Molate, the site of a decommissioned United States Navy fuel depot located on the coast of the City.

Upstream and the Tribe have sued the City for breach of the Land Disposition Agreement ("LDA") between Upstream and the City, as well as for breach of the implied covenant of good faith and fair dealing.  The district court granted the City's Motion for Judgment on the Pleadings and dismissed the breach of contract and bad-faith claims, denied Appellants leave to amend, and awarded the City legal fees from the Tribe and Upstream.  The district court then entered an

---

[**]   The Honorable Marvin J. Garbis, United States District Judge for the District of Maryland, sitting by designation.

[1] The Tribe also asserts federal claims against the United States pertaining to the denial of approval of federal gaming authorization under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 *et seq.*  The district court has stayed proceedings regarding the Tribe's claim against the United States pending resolution of the instant appeal.

amended judgment, finding no just reason for delay pursuant to Federal Rules of Civil Procedure 54(b). We have jurisdiction under 28 U.S.C. § 1291.

As discussed herein, we affirm the dismissal of certain of Appellants' claims, reverse the dismissal of certain of Appellants' claims, and remand for further proceedings.

**1. Breach of Implied Covenant of Good Faith and Fair Dealing.** The district court erred in concluding that Appellants failed to plead a plausible claim of breach of the implied covenant of good faith and fair dealing.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 826 P.2d 710, 726 (Cal. 1992) (quoting Restatement (Second) of Contracts § 205). "In the case of a discretionary power, it has been suggested the covenant requires the party holding such power to exercise it 'for any purpose within the reasonable contemplation of the parties at the time of formation — to capture opportunities that were preserved upon entering the contract, interpreted objectively.'" *Id.* at 727 (quoting Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv. L. Rev. 369, 373 (1980)).

The Third Amended Complaint ("TAC") contains plausible allegations that the City violated the implied covenant of good faith and fair dealing by interfering with Appellants' ability to obtain federal approval for the casino, thereby preventing Appellants from satisfying a condition precedent of the LDA.

The TAC alleges that, beginning in 2009, the City, through Mayor Gayle McLaughlin, contacted the Bureau of Indian Affairs, Contra Costa County, and various public officials including the Governor of the State of California and United States Senator Dianne Feinstein, to encourage them to deny, delay, or otherwise oppose the Tribe's quest to obtain the necessary federal and state approvals for gaming. Appellants allege that this pressure delayed the federal approval process — a condition precedent of the LDA — sufficiently that the City abandoned the project in April 2011 in part because "[w]ithout these Federal approvals, a casino use at Point Molate is not legally permitted." Resolution No. 23-11 ¶ 5. Appellants further allege that the City's pressure ultimately led the Department of the Interior ("DOI") to determine in September 2011 that the Point Molate property was not eligible for gaming.

On April 5, 2011, the City issued Resolution 23-11, determining that a casino use was not allowed at Point Molate. In Resolution 23-11, the City cited the federal government's delay in granting the approvals and the opposition of other

5

government officials as reasons for its denial.  Appellants contend that the City acted in bad faith, as the delay in approvals and the opposition of federal officials were induced by the City's own covert lobbying.

Under the "doctrine of prevention," if a contracting party interferes with the performance of a condition precedent in a way that the parties did not reasonably contemplate, then the interference is a breach of the implied covenant of good faith and fair dealing, and the interfering party "cannot in any way take advantage of that failure [of the condition precedent]."  13 *Williston on Contracts* § 39:3 (4th ed.)*; s*ee also City of Hollister v. Monterey Ins. Co.*, 81 Cal. Rptr. 3d 72, 100 (Cal. Ct. App. 2008), *as modified on denial of reh'g* (Aug. 28, 2008).  "The implied covenant of good faith and fair dealing requires a promisor to reasonably facilitate the occurrence of a condition precedent by . . . refraining from conduct which would prevent or hinder the occurrence of the condition . . . ."  *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 212 (2d Cir. 2002) (quoting *Cauff, Lippman & Co. v. Apogee Fin. Group, Inc.*, 807 F. Supp. 1007, 1022 (S.D.N.Y. 1992)).

Appellants allege in the TAC that the parties to the LDA did not contemplate that the City would directly attempt to oppose or interfere with the Tribe's gaming application and Request for a Land Determination.  Whether the City is liable for the Mayor's actions depends on whether she acted in her official capacity, which is

6

ordinarily a question of fact better resolved after discovery and not through a Motion for Judgment on the Pleadings. *See Farmers Ins. Grp. v. Cty. of Santa Clara*, 906 P.2d 440, 458–59 (Cal. 1995).

The TAC contains some of the alleged interfering communications from Mayor McLaughlin wherein she identifies herself as the Mayor acting on behalf of the City of Richmond. These allegations present an issue of fact concerning whether the Mayor was acting in her official capacity and are sufficient to plead a plausible claim of breach of the implied covenant of good faith attributable to the City. *See Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes*, 120 Cal. Rptr. 3d 797, 803 (Cal. Ct. App. 2010) ("The Developer established a breach attributable to the Town by evidence of the actions of town officials, acting within their authority."). Therefore, the City is not entitled to judgment on the pleadings on the theory that it is not responsible for the actions of the Mayor.

We also disagree with the district court's conclusion that the waiver provision in the Sixth Amendment to the LDA precluded a claim based on the Mayor's actions. That Amendment, executed May 18, 2010, states,

> "[N]o event of default under the LDA exists as of [May 18, 2010], and that no event has occurred which, with the passage of time or the giving of notice, or both, would constitute an event of default."

Sixth Amendment to the LDA, § 5.

However, to the extent that there may have been a waiver of default claims, the waiver would not apply to the alleged actions causing defaults after May 18, 2010. At least two of the Mayor's allegedly improper actions, as well as the City's disapproval of the casino project, occurred after May 18, 2010.[2] Therefore, the City is not entitled to judgment on the pleadings by virtue of the waiver provision in the Sixth Amendment.

We therefore conclude that the TAC states a plausible claim that, by preventing the occurrence of the condition precedent and relying partially on the non-occurrence to deny the casino project and avoid carrying out the purpose of the LDA, the City breached the implied covenant of good faith and fair dealing when it promulgated Resolution 23-11 and discontinued consideration of a casino use for Point Molate.

---

[2] Specifically, these included a June 1, 2010 letter to several U.S. Senators lobbying them to deny the Tribe's application, and an August 15, 2010 speech at a conference of the United States Representatives regarding Indian Gaming, where Appellants allege that "Mayor McLaughlin in her official capacity of Mayor, expressly advanced the City's position the Tribe's Land Determination Request should be denied . . . ." TAC ¶¶ 63-64.

**2. Breach of Express Terms of Contract.** Appellants also claim that the

City breached the express terms of § 2.8 of the LDA,[3] which states:

> If it is determined that the development of Indian gaming uses on the Property is not commercially feasible or not legally permitted, the Developer may purchase and lease the Property without any involvement by any Native American tribe, and, prior to the Closing Date, *the Developer and the City shall negotiate exclusively in good faith* for a period not to exceed one hundred twenty (120) days with respect to an alternative development proposal.

LDA § 2.8 (emphasis added).

We agree with the district court that the TAC's allegations regarding breach

of express terms of contract were conclusory and unsupported by any specific

allegations. Appellants, however, should have been permitted to augment these

allegations in a Fourth Amended Complaint.

**3. Leave to Amend.** The district court abused its discretion in denying

Appellants' motion for leave to file the Proposed Fourth Amended Complaint

("FAC"). In the Proposed FAC, Appellants added non-conclusory, factual

allegations regarding the 120-day negotiation period. Appellants' new allegations

---

[3] Appellants also contend that the City violated the Sixth Amendment to the LDA by failing to give "equal consideration to each project alternative identified in the [Final Environmental Impact Report]." Sixth Amendment to the LDA, § 3(c). Since Appellants did not raise this issue in the district court or in the TAC, it will not herein be considered.

9

plausibly state that the City was merely going through the motions of negotiating. The Proposed FAC states that City representatives would come to negotiation meetings only "to listen," that the City repeatedly failed to respond to Upstream's substantive questions concerning the City's goals or preferences for the project, and that during the negotiation period the City filed a lawsuit against Upstream seeking declaratory relief that it had no further obligations under the LDA, including Section 2.8.[4]  FAC ¶¶ 89–90, 94–95, 98, 106–07.

While the City was contractually free to reject Upstream's proposal, the City's mere attendance at meetings and correspondence with Upstream is not *per se* good faith negotiation.  *See Placentia Fire Fighters v. City of Placentia*, 129 Cal. Rptr. 126, 136 (Cal. Ct. App. 1976) ("Consequently, to sit at a bargaining table, or to sit almost forever, or to make concessions here and there, could be the very means by which to conceal a purposeful strategy to make bargaining futile or fail.").

---

[4]  Upstream also alleges that, unlike past negotiations over LDA amendments, the City's attorneys attended the meetings instead of the City Council members, and that in every other project considered by the City during the same time period, the City issued a Statement of Overriding Consideration or Mitigated Negative Declaration to approve the project despite findings of adverse negative impacts. FAC ¶¶ 115, 120.

When taken in a light most favorable to Appellants, the TAC plausibly alleges that the City did not negotiate in good faith. Accordingly, the Order Denying Leave to Amend is reversed, and Upstream may file the Proposed FAC.

**4. Attorneys' Fees.** In light of the reversal of the district court's dismissal, the district court's order on attorneys' fees is vacated. However, we conclude that the district court correctly determined that the Tribe waived its sovereign immunity and would not be exempt from a future attorneys' fees award.

The Tribe asked, as part of its requested relief, that the district court grant "[a]n award of damages against the City of Richmond for . . . cost of suit, including reasonable attorneys['] fees and costs as permitted by law." TAC at 38. Thus, attorneys' fees was one of the issues that the Tribe expressly requested the district court to resolve and put under its jurisdiction. *Cf. Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1245 (8th Cir. 1995) (finding that the Tribe had waived sovereign immunity as to counterclaims when it "affirmatively requested the district court to resolve the ownership of the disputed land by asking the defendants to assert any [claims] they may have in the disputed lands").

Once the Tribe consented to federal court jurisdiction over the attorneys' fees issue, it was bound by the district court's determination under California law, which applies to the Tribe as it would to any other third-party beneficiary. *See* Cal.

11

Civ. Code, § 1717; *Real Prop. Servs. Corp. v. City of Pasadena*, 30 Cal. Rptr. 2d 536, 541 (Cal. Ct. App. 1994).

For the foregoing reasons:

1. We reverse the district court's grant of the Motion for Judgment on the Pleadings and remand the case for further proceedings regarding whether the City violated the LDA by interfering with the Tribe's ability to fulfill a condition precedent.

2. We affirm the district court's dismissal of the express breach of contract claims.

3. We reverse the district court's order denying leave to amend the Proposed Fourth Amended Complaint. Appellants may file the Proposed Fourth Amended Complaint.

4. The district court's amended judgment is vacated and the case is remanded for further proceedings consistent herewith, including consideration of a legal fee award against the Tribe.

The parties shall bear their own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**